### IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT MACON,

## FEBRUARY TERM, 1853.

Present—JOSEPH H. LUMPKIN, ⎫
         HIRAM WARNER, ⎬ Judges.
         EUGENIUS A. NISBET. ⎭

No. 1.—MILTON P. TUCKER, plaintiff in error, *vs.* STEPHEN
   HARRIS, defendant in error.*

[1.] A purchaser at administrator's sale, who has his deed first recorded, will gain the same preference over an unrecorded deed, as if he had bought of the intestate in his life-time.

[2.] Registry Acts having a retrospective operation, have never been considered as falling within the constitutional inhibition against *ex post facto* laws, or laws impairing the obligation of contract, provided they allow a reasonable time after their passage to record existing or antecedent deeds.

[3 ] An order of the Court of Ordinary, in the words following: " upon the application of Daniel S. Robertson, and after due and legal notice, ordered *that he be and he is* hereby appointed administrator, &c. upon his giving bond in the sum of $25,000, with John E. Morgan as his security," is an absolute and not a conditional appointment, and the official bond being produced, bearing date the same time the order was passed, and for the sum and with the security therein required, the appointment will be deemed and held valid for all purposes whatsoever.

---

*NOTE.—Judge Warner did not preside in this case, having been of counsel for one of the parties. After the delivering of the opinion by his associates, he expressed from the Bench his hearty concurrence therein. REP.

Tucker *vs.* Harris.

[4.] Nothing is to be *presumed* in favor of *jurisdiction;* but if jurisdiction is shown, everything will be intended in favor of the judgments of Courts, and they must be taken to have judged rightly, unless the contrary appears.

[5.] The line of demarcation between Courts of general and limited jurisdiction, not accurately defined.

[6.] The jurisdiction of the Superior Courts of Georgia is limited.

[7.] Courts of Ordinary in this State are not created by Statute. They are *constitutional* Courts. They are also Courts of *record.* They are clothed with original, general and exclusive jurisdiction, except by appeal, in the most comprehensive terms, on testate and intestate estates.

[8.] By the Act of 1816, it is made lawful for the Courts of Ordinary to order a sale of real estate, on application of the executor or administrator, where it is made fully and plainly to appear, that the same will be for the benefit of the heirs and creditors, provided that notice of such application be made known in one of the gazettes of the State, at least four months before any rule absolute shall be passed, ordering said sale: *Held,* that this Statute does not limit the jurisdiction over estates already conferred on the Ordinary by the Constitution and laws of the State; but simply directs the mode in which it shall be exercised relative to the sale of the real estate of a testator or intestate ; that the jurisdiction *potentially* attached at the death of the intestate, and was called into exercise upon the application of the administrator, he having given the requisite notice of his intention to apply for leave to sell.

[9.] The jurisdiction of a Court being established, it may be shown to have been improvidently exercised, and in a manner not warranted by the evidence ; still its decision is conclusive until reversed, and even then a *bona fide* purchaser under a sale ordered by the Court will be protected.

[10.] Judgments of the Ordinary, like those of all other Courts having jurisdiction over the person and subject-matter, may be impeached and reversed, if erroneous or irregular, by appeal or by direct proceeding, instituted in the Court for that purpose; still, rights acquired under such judgments before they are displaced, will be protected.

[11.] Courts should give a liberal construction to Statutes authorizing the sale of real estate and slaves in Georgia, by executors and administrators, and public policy requires that all reasonable presumptions should be made in support of such sales.

[12.] Act of the Legislature demanded, declaring that Courts of Ordinary are Courts of general jurisdiction *quoad* testate and intestate estates.

[13.] Greater indulgence has of late been shown to Inferior Courts; and the presumption has rather been in favor of their jurisdiction than against it.

[14.] A tribute of respect to the memory of the late Richard Henry Wilde, Esq.

Ejectment, in Meriwether Superior Court. Tried before Judge HILL. August Term, 1852.

This action was brought by the defendant against the plaintiff in error for the recovery of lot of land number 112, in the seventh district of Meriwether County. Several demises were laid in the declaration ; both parties, however, claimed title through one Howell W. Jenkins.

On the trial, plaintiff read in evidence the grant from the State of Georgia to Stephen Harris, dated 21st day of February, 1828, to the lot of land in dispute, and closed his case.

The defendant then read in evidence a deed from Harris to James B. Caswell, made in 1828, and one from Caswell to Howell W. Jenkins, made in 1829, and one from Jenkins to John Burke, a co-defendant, dated on the 9th day of June 1829, and recorded on the 15th day of February, 1840, and closed.

The plaintiff then proposed to read in evidence the following orders, passed by the Inferior Court of Troup County, sitting as a Court of Ordinary, the first on the 4th day of September, 1837, and the second on the seventh day of May, 1838.

1st. " Upon the application of Daniel S. Robertson, and after due and legal notice, ordered that he be, and is hereby appointed administrator on the estate of Howell W. Jenkins, late of this County, deceased, upon his giving bond in the sum of $25,000, with John E. Morgan as his security," and that letters of administration issue to him accordingly."

2d. " Upon the application of Daniel S. Robertson, administrator of Howell W. Jenkins, deceased, for leave to sell the real estate and negroes belonging to said deceased's estate, and he having published the same in terms of the law,

_"It is ordered that the said administrator have leave to sell the estate, both real and personal, of Howell W. Jenkins, deceased, in terms of the law made and provided."

Plaintiff also proposed to read at the same time a copy of

the bond, made by Jenkins, with Morgan as security, in conformity with the first order.

To the introduction of these orders and bond, bearing date on the same day the order was passed, and for the same amount, and with the same security therein, defendants objected, on the grounds:

1st. Because it did not appear that Daniel S. Robertson had complied with said order, and obtained said letters, or to be entitled thereto.

2d. Because it did not appear from the second order, authorizing the sale of deceased's property, the object for which it was sold; that the Court of Ordinary, being a Court of limited jurisdiction, should appear affirmatively upon the face of said order, that it was made fully and plainly to appear to said Court that said contemplated sale was for the benefit of the heirs and creditors of said estate, and that in absence of a recital of these facts in the order, the Court would not presume that it was made to appear by evidence to said Court of Ordinary that the sale was for the above object, and that a recital of these facts in the order, would only be *prima facie* evidence that they were made to appear."

3d. Because it no where appeared from the Clerk's certificate or other legal evidence, that the said Daniel S. Robertson complied with the order of said Court, by giving the bond required, and that he was sworn and qualified in open Court."

The Court overruled the objections, and allowed the orders and bond to be read in evidence, and defendant excepted. The plaintiff then read in evidence a deed from Robertson, as administrator of Jenkins, to Samuel W. Darden, dated the 7th of August, 1838, and recorded on the 18th day of October, 1838.

The Court charged the Jury, "that the deed made by Robertson, as adminstrator, to Darden, was entitled to preference over the one made by Jenkins to Burke; the former, though the youngest deed, being recorded within twelve months from its execution, and the latter not recorded within the time prescribed by law.

The Court further charged the Jury, " that it was necessary that it should be shown to the Court of Ordinary that the contemplated sale should be for the benefit of the heirs and creditors of the estate, but that it was not necessary for it to appear upon the face of the order to sell, that it was made to appear to the Court, but that the Jury would presume that it was made," &c.

To which charges counsel for defendants excepted, and upon these exceptions has assigned error.

TIDWELL & FULLER, for plaintiff in error.

O. WARNER, for defendant in error.

*By the Court.*—LUMPKIN J. delivering the opinion.

As both plaintiff and defendant claim from Howell W. Jenkins, it is unnecessary to trace the title to the land in dispute back of him.    Jenkins sold the lot in his life-time to John Burke, one of the defendants in ejectment, by deed bearing date the 9th of June, 1829, but not recorded until the 15th day of February, 1840.    After the death of Jenkins, the lot was again sold by Daniel S. Robertson, his administrator, and a deed was executed to Samuel Darden, the lessor of the plaintiff, on the 7th of August, 1838, which last deed was recorded the 18th of October, 1838.

[1.] Apart from other considerations, which of these conveyances is entitled to priority, under the Registry Acts of this State?

The Act of 1837 provides that " in all cases where two or more deeds shall hereafter be executed by the same person or persons, conveying the same premises to different persons, the one recorded within twelve months from the time of execution, (if the feoffee have no notice of the prior deed unrecorded at the time of the execution to him or her) shall have preference." *New Dig.* 175.

In *Ellis vs. the lessee of Smith*, (10 *Geo. Rep.* 253) this

Court held, that a purchaser at Sheriff's sale who has his deed first recorded, will gain the same preference over an unrecorded deed, as if he had bought directly from the debtor himself. The rule and the reasoning in that case apply with full force to a purchaser at an administrator's sale.   See also 5 *Miss.* 387. 1 *Green*, 43.   The Act of 1837 established no new principle upon this subject, but was *declaratory* only.   The priority there given, had been the settled doctrine of the Courts of Georgia, certainly from the organization of our State Government, and was probably coeval with the provincial Act of 1755, requiring all conveyances of land to be recorded within a limited period, and on failure, to be deemed and construed to be void and of no effect.   *Marbury and Crawford's Digest,* 111. *Harrison vs. Neal, Dudley's Rep.* 168.   By the Registry Acts of England, as expounded by the Courts of that country, grantees in a deed executed after, but recorded before another conveyance of the same land, being *bona fide* purchasers without notice, are deemed to have the better title.   See *Brown vs. Jackson,*   3 *Wheat.* 449.   4 *Cond. Rep.* 291.

[2.] But had the rule been established for the first time by the Act of 1837, giving preference to the deed first recorded, the Courts would construe it to extend to conveyances made previous to its passage; as Registry Acts having a re-trospective operation, have never been considered as falling within the constitutional inhibition against *ex post facto* laws and laws impairing the obligation of contract.   2 *Yerger's Rep.* 125. *Ib.* 260.   *In Jackson vs. Lamphire,* (3 *Peters' Rep.* 280,) the Court held that State Legislatures had the undoubted right to pass recording Acts, by which the elder grantee should be postponed to a younger, if the prior deed was not recorded within a limited time.   Had the Act of 1837 been passed to take effect *instanter,* and been made to apply to antecedent conveyances, and had not allowed a reasonable time after its enactment to record existing deeds, such an Act would be unconstitutional.   But here, a reasonable time was allowed.   The Act passed in December, 1837, and the prior deed was not made until August, 1838, nor recorded until the month of Oc-

Tucker *vs.* Harris.

tober thereafter. Up to August, 1838, (some eight months,) the deed from Jenkins to Burke was not only good as between them, although executed in 1829, but was valid against all the world. For although not recorded within the time prescribed by law, still if it had been recorded before the sale by Robertson, the administrator, the first deed would have prevailed.

[3.] The other question made by the bill of exceptions is one of much more difficulty and importance.

We do not doubt the validity of Robertson's appointment, as administrator. The proper construction of the order is, that it is absolute, not conditional. It is that Robertson, "be and *he is hereby appointed, &c.*" and his official bond is produced, corresponding in date, amount, the name of the security and every other particular with the order. We presume that it was given in open Court at the time the order was passed, and that the applicant was then and there duly qualified in terms of the law.

The difficulty arises as to the sufficiency of the second order, directing a sale of the land in controversy.

The argument in behalf of the plaintiff in error is, that the Court of Ordinary being a Court of limited jurisdiction, all the facts which are necessary to give it jurisdiction, should affirmatively appear upon the face of its proceedings.

[4.] And we recognize the rule, that nothing is to be *intended* in favor of jurisdiction. But if the jurisdiction is shown, *every thing* will be *intended* in favor of the *judgments* rendered by Courts; and they must be taken to have judged right unless the contrary appears. *Willes*, 416. 8 *T. Rep.* 181, 182.

[5.] The line of demarcation between Courts of general and limited jurisdiction, is not so definite however, as is generally supposed. It is usual to state what particular Courts fall within the one class, and what within the other. But what author has undertaken to mark with accuracy and precision the boundary between the two? Bacon has not, nor has Blackstone, nor any other elementary writer.

[6.] The Superior Courts of this State are called Courts of

*general* jurisdiction. And yet *their* jurisdiction is limited by the Constitution. They cannot try titles to land, out of the County where they are situated, or a person accused of a crime out of the County where the offence was committed: nor can they in a civil suit carry the defendant in any case out of the County of his residence, except in a few specified cases, such as joint promissors, co-obligors, &c. Indeed, it is a well settled principle, that the judgments and decrees of Courts of the most unlimited jurisdiction, and of the highest rank, as well as those of a tribunal of *peculiar* jurisdiction, have been adjudged nullities, because the circumstances of the case made it an exception to the general jurisdiction of the Court. *Griffith vs. Frazier*, 8 *Cranch*, 9. *Kane vs. Paul*, 14 *Peters*, 39. 1 *Peters*, 340. 13 *Peters*, 511. 2 *Howard*, 59. 3 *Howard*, 762.

[7.] The Courts of Ordinary in this State, are not created by Statute ; they are *constitutional* Courts. *New Dig.* 1122. They are Courts of record, which the Ecclesiastical Courts of England are not. They are clothed with original, *general* and exclusive jurisdiction, (except by appeal) in the broadest terms, over testate and intestate estates. *New Dig.* 281, 283. The jurisdiction of the Spiritual Courts in England, in matters testamentary and of administration, is extremely limited. And such is the fact too, in many of the States of the Union. And the limits of so much of their jurisdiction in these matters as is *peculiar* and *exclusive*, are still narrower. There is scarcely any portion of the Ordinary's jurisdiction in these matters, in which the temporal Courts of Law and Equity, have not interfered, and exercised, directly or indirectly, a controlling power.

But in this State may be claimed for the Courts of Ordinary, not only all the jurisdiction which may be legitimately deduced from the Common Law and statutory jurisdiction of the Ordinary in England, as it existed when the Provincial Ordinary of Georgia came into existence ; but all those extensions or modifications which it has received since, from either Provincial or State legislation.

[8.] Under this comprehensive grant, this Court would clear-

Tucker *vs.* Harris.

ly be invested with the right to order the sale of real estate belonging to an intestate, what limitation has been put upon this power by subsequent legislation? The Act of 1816, makes it lawful in the Ordinary, to order a sale of real estate of a testator or intestate, on application of the executor or administrator, where it is made fully and plainly to appear that the same will be for the benefit of the heirs and creditors; *provided*, that notice of such application be made known in one of the gazettes of the State, at least four months before any rule absolute shall be passed, ordering said sale. *New Dig.* 323.

This Act does not in fact *limit* in the least the *jurisdiction* over estates already conferred on the Ordinary by the Constitution and laws of the State. It simply directs the mode in which it shall be exercised relative to a particular subject-matter, to wit: the disposition of the real estate of a testator or intestate. Here, the subject-matter was the land of Howell W. Jenkins, deceased. The record showed that Jenkins died intestate in the County of Troup, and that he owned real and personal estate in Geargia. Under the Acts of 1799 and 1810, especially, the Court of Ordinary of Troup County, had jurisdiction over it, either to order it sold or not, according to the best of its judgment. The jurisdiction *potentially* existed in the language of one of the authorities from the death of Jenkins. It was called into exercise upon the application of the administrator. He must give notice of his intention to apply for leave to sell, and then he comes before the Court and asks its judgment upon the proofs submitted. It is called on to determine whether it is satisfied that the interest of the heirs and creditors requires a sale. The record shows that the application was made in proper form, and after due and legal notice, and that a sale was in fact ordered. This judgment then stands upon the footing of all other judgments. We are bound to presume that it was made "fully and plainly to appear" to the Court by the testimony adduced, that it was for the "benefit of the heirs and creditors of the estate" that license to sell should be granted.

Tucker *vs.* Harris.

The jurisdiction being established all presumptions must be made in favor of what does not appear. The Court having the right to decide upon the application; the purchasor is not bound to go behind the judgment of the Court.

[9.] The jurisdiction may have been improvidently exercised, and in a manner not warranted by the evidence. The purchaser under the sale is not responsible for the mistakes of the Court. Its decision is conclusive; its judgment, until reversed, binding in every other Court. Nor can it be collaterally impeached, however erroneous and irregular. 10 *Pick.* 470. 6 *Ib.* 232. 7 *Cranch,* 483. 3 *Wheat.* 136. 1 *Yeats,* 533. 2 *Dall.* 54. 1 *Mason,* 515. 1 *Peters' C. C. Rep.* 199. 3 *Johns.* 157. 4 *Conn.* 276. 2 *Nott and McCord,* 410. 6 *Sergt. and Rawle,* 57.

[10.] If the judgments of the Ordinary, having jurisdiction over the subject-matter, be erroneous or irregular, like all other judgments, they may be attacked by a direct proceeding in the Court where they were rendered, and set aside or corrected. Nevertheless, rights acquired under such judgments, before they are displaced, will be protected. 10 *Peters' Rep.* 475. 6 *Har. and Johns.* 204. 1 *Cowen,* 622. 4 *Cranch,* 328. 8 *Johns.* 361. 13 *Johns.* 97.

[11.] In delivering the opinion of the Court, in *Worthy et. al. vs. Johnson et. al.* (8 *Geo. Rep.* 236,) I took occasion to remark, that "without intending to confound the distinction between Courts of general and special jurisdiction, some of us thought that Courts should give a liberal construction to Statutes authorizing the sale of real estate and slaves in Georgia, by executors and administrators; that public policy required that all reasonable presumptions should be made in support of such sales, in favor of *bona fide* purchasers, especially respecting matters *in pais ;* that the number of titles thus derived, and the too frequent inaccuracy of Clerks and others concerned in effecting these sales, renders this absolutely necessary; that if a different rule prevailed, purchasers would be timid, and estates consequently sold at a diminished value, to the prejudice of heirs and creditors."

Tucker vs. Harris.

[12.] Subsequent research and reflection, as well as the very thorough, clear, and discriminating argument submitted in this case, has convinced me thoroughly of the truthfulness of the foregoing remarks. And I trust that another Legislature will not be permitted to intervene without passing an Act co-extensive with the exigencies of the case, by declaring expressly that Courts of Ordinary are what I *now* believe them to be already, under the Constitution and laws of Georgia, *Courts of general jurisdiction, as to testate and intestate estates.*

[13.] Greater indulgence has of late years been shown to Inferior Courts; and the presumption has rather been in favor of their jurisdiction than against it.

To show this, let a few cases be cited.

By Statute in Connecticut, the Judges of the Probate Court are authorized to order a sale of the *real* estate of a decedent *only* when the debts and charges allowed by the Court against the same, shall exceed the *personal* estate. *Revised Code,* tit. 60, *c.* 1, §22. In *Brown vs. Suman,* (1 *Conn. Rep.* 467,) the validity of an administrator's title was denied, because the proceedings did not show upon their face that the " *debts and charges allowed by* the Court exceeded the personal estate." And it was argued that as the administrator had no power at Common Law to sell real estate, and the only authority he can have in any case, being derived from the Statute, the provision of the Statute must be strictly pursued and complied with in every particular—otherwise no title is conveyed; that the Statute authorizes the Judge of Probate to order a sale of real estate only in case the *debts and charges allowed* exceed the personal estate. If no debts are allowed, an order of sale is a nullity. That the Court of Probate being a Court of *limited* jurisdiction, it must appear from the face of its proceedings, that it had jurisdiction; and that here a fact is wanting, without which a Court of Probate has no more cognizance of the question of sale than a Justice of the Peace has. In the absence of that fact, he has no authority to interfere.

This is the argument in all its strength, delivered by counsel for the plaintiff in error in the case before us, than which no

two could be more precisely parallel. But what say the Supreme Court of Connecticut, under laws conferring a much more *restricted* jurisdiction upon their *Probate* Courts than is vested in the Courts of Ordinary here, under the Constitution and Statutes of this State?

It *held*, (stopping the attorney on the other side!) that though such proceeding might be erroneous, and set aside on appeal, yet as the Court had jurisdiction of the subject-matter and there was no fraud in the case, the order of sale was valid until set aside, and could not be collaterally called in question ; and Chief Justice *Swift*, in delivering the opinion of the Court of Errors, asserted that even admitting that a judgment of sale could be set aside for irregularity, it would be no ground for vacating the title of a *bona fide* purchaser under it. He moreover stated, that many instances of similar sales had occurred in that State; and that the alleged defect in the proceedings had never been deemed a ground to annul a conveyance.

I am aware that decisions have been made in that State, which to some extent impugn the doctrine of *Brown vs. Sunman*. We believe however, that the weight of *argument*, if not of *authority*, will be found, upon examination, to be in favor of the judgment rendered in that case.

This question has been repeatedly before the Courts of Alabama. *Wyman et al. vs. Campbell et al.* 6 *Porter's Rep.* 219. *Lee vs. Campbell et al. Ib.* 249. *Couch & Robinson vs. Campbell et al. Ib.* 262. *Doe ex dem. Duval's heirs vs. McLosky*, 1 *Ala. Rep. N. S.* 708, and *Duval's heirs vs. The P. and M. Bank et al.* 10 *Ala. Rep. N. S.* 636. *Perkins' Ex'r. vs. Winter's Ex'r.* 7 *Ala. Rep. N. S.* 855.

By the Act of that State, of December, 1822, the executor or administrator is authorized to " file a petition in the County Court in which letters testamentary or of administration have been granted, setting forth that the personal estate of his testator or intestate (as the case may be) is not sufficient for the payment of the just debts of such testator or intestate, or that the real estate of such testator or intestate cannot be equally, fairly, and beneficially divided among the heirs or devisees of such testa-

tor or intestate, without a sale of the real estate ; setting out and particularly describing in such petition the estate proposed to be sold, and the names of the heirs or devisees of such testor or intestate ; and particularly stating which are of age, and which are infants or *feme coverts.*" The Act further directs that upon *filing* the petition in open Court, it shall be the duty of the Court to order citations to all the heirs and devisees who are of full age, and to the husbands of such as are *feme covert,* requiring them to appear on a particular day mentioned therein, at a regular or adjourned term of said Court, and answer the petition ; and it is made the duty of the Court to appoint forthwith guardians to such of the heirs or devisees as are infants, to answer and defend against the same. And where a sale of the estate shall be ordered or decreed by the Court, commissioners shall be appointed in the order or decree, with directions to sell the estate either for money or on credit, as may be most just and equitable, and to report to the Court in the time limited in the order or decree. The Act further provides, that upon the coming in of the report of the commissioners, the Court shall render a final decree in the cause, and if the terms of the sale have been complied with by the purchaser of the estate, the commissioners shall be directed by such final decree to convey the estate sold to the purchaser.

In *Duval's heirs vs. McLoskey,* (1 *Ala. Rep. N. S.* 708,) the Supreme Court *held,* that the jurisdiction of the County Court, under the first section of this Act, " to authorize administrators to sell land belonging to the estate of the intestate," *attached as soon as the Court recognized the petition of the administratrix ;* that the order for the sale of the real estate could not be considered invalid, because the record did not contain the petition *filed* by the administratrix, and that its decree for a sale could not be collaterally impeached by the omission to designate the heirs by name in the petition or elsewhere in the record, or by the direction of the citation to the *guardian* instead of the *heirs.* That though it may not appear *in totidem verbis* from the decree of the County Court, that it was rendered at a regular or an adjourned term ; if the contrary

does not appear, it will be taken to have been rendered in conformity with the Statute. And all these positions were reaffirmed in the subsequent case between *Duval's heirs and The P. & M. Bank et al.* 10 *Ala. Rep. N. S.* 636.

So in the case before us, the jurisdiction of the Court of Ordinary, that is, its right to hear and determine, *certainly attached, upon the application of Robertson to sell the real estate of Jenkins,* which the record shows was duly made. Whether the after-proceedings were regular and authorized by the proof, is an immaterial inquiry. For the question we are discussing, is one of jurisdiction; not whether the order of sale was voidable and could have been set aside, by a direct proceeding instituted for that purpose. Was it *void ?* If the cases cited are law, the jurisdiction exercised by the Ordinary of Troup County, is clearly defensible.

The case of *Thompson vs. Somlie,* (2 *Peters' Rep.* 165,) very fully maintains the jurisdiction of the Court of Ordinary of Troup County, in ordering the sale of the premises in dispute.

[14.] It was argued, amongst other distinguished counsel, by the late lamented Richard Henry Wilde, Esq.—a name ever dear to Georgia and to fame—a gem of the purest ray—a man of rare genius, exhibiting in happy combination, the chaste, cultivated and classic taste of Pinckney, and the brilliant and exuberant imagination of Wirt, with the sound and solid sense of Sergeant.

The proceedings which were collaterally drawn in question in that case, originated in the District of Columbia, and were founded on a law of Maryland, which declares, that in case the parties entitled to the intestate's estate cannot agree upon a division, or in case any person entitled to any part, be a minor, application may be made to the Court of the County where the estate lies, and the Court shall appoint and issue a commission to five discreet men, who are required to adjudge and determine whether the estate will admit of being divided without injury and loss to all the parties entitled, and to ascertain the value of the estate. And if the estate can be divided without

injury and loss to the parties, the commissioners are required to make partition of the same. And if they shall determine that the estate cannot be divided without loss, they shall make return to the County Court, and of the reasons upon which their judgment is formed, and also the real value of the estate. And if the judgment of the commissioners shall be confirmed by the County Court, then the oldest son, child, or person entitled, if of age, shall have the election to take the whole of the estate, and pay to the others their just proportion of the value in money; and on the refusal of the oldest child, the same election is given in succession to the other children or persons entitled, who are of age ; and if all refuse, the estate is to be sold under the direction of the commissioners, and the purchase money divided among the several persons entitled, according to their respective titles to the estate. But if all the parties entitled shall be minors at the death of the intestate, *the estate shall not be sold until the oldest arrives to age,* and the profits of the estate shall be equally divided in the meantime.

Under this law, it was held by the Supreme Court of the United States, that the jurisdiction of the Court over the subject-matter of the proceedings did not depend on the fact that one of the heirs was of age, *but attaches when the ancestor dies intestate,* and any of the persons entitled to his estate is a minor.

And Mr. Justice *Thompson,* in delivering the opinion of the Court, says: "Every reasonable intendment is to be made in favor of the proceedings. The age of the heirs, was at all events, a matter of fact, upon which the Court was to judge; and the law nowhere requires the Court to enter on record the evidence upon which their decision is made. And how can we now say, but that the Court had satisfactory evidence before it that one of the heirs was of age?"

So here, whether it was for the benefit of the heirs and creditors of Howell W. Jenkins that this land should be sold, is a matter of fact upon which the Court was to judge. And how can we now say that it was not made " plainly and fully" to appear, that it was for the interest of the estate that the

sale should be made? The law nowhere requires, in this State, the petition to be in writing or to be filed or recorded, or the evidence to be preserved, upon which the Court acted. By recurring to the Alabama Statute of 1822, it will be discovered that it requires that the executor or administrator "*shall file*" a petition in open Court, as the initiatory step towards obtaining an order or decree for the sale of the real estate of their testator or intestate. And yet the Court say in the case referred to in 1 *Alabama*, that if the County Court goes on to render its decree, it cannot be intended from the *absence* of such a paper merely, that it was never filed; but that the intendment most rational, would be *that it was lost after the rendition of the order*. How much more reasonable to make such presumptions in favor of the judgments or orders of *our* Courts of Ordinary, where as I have already stated, the petition is neither required to be in writing *nor filed*.

Again, in the precedent from *Peters*, where the Act provided that if all the parties were minors at the death of the intestate, *the estate should not be sold until the eldest arrives to age*, and the principal objection raised to the title was, that none of the heirs had arrived at age when the sale was made, the Court say: "It is to be borne in mind that no such fact appears on the face of the proceedings." That is, instead of requiring the record to show affirmatively that one of the heirs of Robert Tolmie had arrived at age, in order to give jurisdiction to the Court to order a sale, they sustain the jurisdiction which it assumed, because it did not appear negatively that none of them had arrived at age.

It is not pretended that there is any evidence in the record from Troup County, that this sale was not for the benefit of the heirs and creditors. But even if there was, the judgment would stand until corrected by a direct proceeding to reverse it. And to permit the matter to be drawn in question in this collateral way, without being impugned for fraud, is not warranted certainly by any principle of law or of public policy.

Another leading case, and one which will be found, upon examination, to have been suggestive of much of the learning

displayed in subsequent discussions of this subject, is that of *M'Pherson vs. Cantillo and thers* (11 *Serg. and Rawle,*) 422.) In that case the Court say: "The matter which gives the Orphans' Court jurisdiction, *is the death of the owner intestate,* for if administration were taken out on the effects of a living man, or of one who died testate, the administration itself would be void, and there could be no administrator to act—no party before the Court; consequently all the proceedings would be null. Where an executor obtains payment on a probate of a void will, without suit it cannot be impeached, notwithstanding the probate was afterwards declared null—it being proved on the faith of the act of a judicial tribunal having competent jurisdiction. (*Toll. Exr.* 51.) The distinction in this respect is this: a probate of the will of a *living person* or a letter of administration on his effects, where the person is dead, but left a will, is void, *ipso facto,* because there is no jurisdiction; *but where the person is dead intestate, the Orphans' Court have power over his estate; and any one acting on the faith of their judicial acts, will be protected.*" And the case of *Griffith vs. Frazer* (8 *Cranch,* 25,) is referred to, to illustrate the well-known distinction between erroneous acts or judgments of a tribunal having cognizance of the subject-matter and of a tribunal having none such.

In order to impress on the public and professional mind, the absolute necessity of protecting the title of fair purchasers under sales made by order of Probate Courts or Courts of Ordinary, Judge *Duncan* most truly and forcibly remarks that if this protection be denied, you lay a train of gunpowder through the whole State, and such a decision would be the signal to set fire to it: for that nothing has been more irregular than the practice of the Courts generally. These orders depend often on perishable testimony; loose scraps of paper deposited in entitled pigeon-holes or packed up as useless lumber in old trunks or boxes; and when to this, is added, and it is a sore evil, their transmission from hand to hand, as the Clerks of these Courts are moved off the stage in rapid succession, these and other circumstances not alluded no, would render this

Tucker vs. Harris.

species of title, so precarious and insecure that no prudent man would buy at such sales. He declares that in some of the Counties even of that ancient Commonwealth, he would not under such rigor of decision, take fifty per cent. to secure the purchasers! Nothing, he thinks, so much requires legislative attention as the proceedings in these Probate Courts; "for as sure as we descend into our graves, so sure into this Court we must come." And in *Snyder's lessee vs. Snider* (6 *Binn.* 496,) Mr. Justice *Yeates*, with an experience of fifty years in the business of this Court, and whose knowledge of the mode of conducting it was greater than any one man living or dead possessed, exclaims, "what! shall *purchasers* be affected by the unskilfulness or negligence of the proper officers!"

The want of adherence to prescribed *formulæ* and to ceremonial observances, and all other minor objections must be overlooked. Presumptions should be made in favor rather than against what does not appear. A substantive compliance only should be expected or exacted.

In *Kennedy vs. Nachsmuth*, decided by the Supreme Court at Philadelphia, Dec. 1823, (but, which I do not find reported in 10 *Sergeant and Rawle*, the proper place for it,) the Court say: "Beyond the decree the purchaser is not bound to look. The inquiries upon ejectment are: was there an administrator and an order to sell, such as would authorize an administrator to make sale? was the sale fair?" If so, the settled rule is, *de fide et officio judicis nor recipitur questio.* And it is asserted that no sale in that State ever has been declared void *in ejectment* againt a purchaser *bona fide*, for any alleged irregularity in the Orphans' Court; or because the decree of the Court was founded on mistake.

I fear that in my great zeal to sustain a rule, on which the title to so many estates depend, that I have enlarged unnecessarily, and too much encumbered this opinion by reference to authority. But in my humble judgment, a graver question has not come before this Court. It is entitled to earnest consideration, both on account of its intrinsic merit, as well as the zeal and ability with which it has been argued by counsel on

both sides. It is now to be determined whether sales made under the orders of our Ordinaries, after due notice, and *upon application*—improvements made—titles derived—possession taken and continued, on the faith of these orders—a Constitutional Court of record, having original general and exclusive jurisdiction except by appeal, over testate and intestate estates—are null and void, and are to be so decreed indirectly in ejectment on original action—while these orders or judgments remain in the Courts rendering them unreversed and in full force?

I am perfectly familiar with the doctrine that Probate Courts cannot order a sale of real estate unless everything necessary to give them jurisdiction of the person and of the subject-matter appears upon their records. It is unnecessary to cite authority in support of this position. Its general correctness we do not doubt. I do insist upon it, however, that under the laws of. this State, the Ordinary is clothed with general jurisdiction over testate and intestate estates. And whether this constitutes them Courts of general jurisdiction *quoad* estates or not, it entitles their judgments to great deference, by other Courts, who have not the authority, directly or *ex professo*, but only by appeal, to interfere with their proceedings. Judge *Duncan*, in the case upon which I have already drawn so liberally, assigns as the reason why he held the sentence or decree of the Orphans' Court of Pennsylvania to be *conclusive*, was, that it is a general rule of law, that where any matter belongs to the jurisdiction of one Court so peculiarly that other Courts can only take cognizance of the same subject incidentally and indirectly, the latter are bound by the sentence of the former, and must give credit to it.

Moreover, I do insist upon it, that the circumstances which attend a State in its early settlement should have much to do in modifying, or rather in relaxing the rigid rules of law. To apply the Common Law of England as it existed at the time of our adopting Statute, or the rules of interpretation enforced in older communities in this country, to new societies, where the legislation as well as the judicial proceedings are conducted with so little regard to exactness, would work the greatest injus-

tice. Let an examination be made, as to the state and condition of the archives of the State or of the various Courts of the different Counties, and what would the report disclose? "Leaves cut out—torn out—injured by damp—mutilated—in fragments—much torn—destroyed by fire—illegible—tattered —imperfect—early registers lost." Startling as the statement may be, it is nevertheless true, that the original draft of the Constitution of 1798 is not to be found! Hence, it cannot fail to have struck the mind of every lawyer, and even layman, who has investigated this matter, what a difference in this respect between the doctrines of the old and new States, and even between the Northern and Southern States— upon many subjects growing not only, and not so much out of the difference in age, as the marked difference in the manners and habits of the people. I repeat then, that even at the present day, taking into view the fact that a large portion of this State has been but recently settled, and where we have but just commenced to require some degree of accuracy and regularity, where carelessness and negligence formerly prevailed, we must not expect nor demand the utmost regularity in the proceedings of our Courts of Ordinary.

Even in the Bay State, not only one of the old thirteen, but among the *first-born* of the sisterhood, if not the morning-star of the bright constellation of States, where the validity of a title to land sold by an administrator was contested, the Court allowed proof to be offered, to show that the Probate Office was kept in a loose and careless manner. And this testimony was held sufficient to justify the presumption, in the absence of higher proof, that the administrator had done what they adjudged to be necessary to a valid sale, namely, that he had posted up the requisite notices and had also taken the necessary oath preceding the sale. *Gray vs. Gardner*, 3 *Mass. Rep.* 399.

It is suggested that whatever may be the public necessity for this decision, yet that it will work great detriment to Burke, who bought of Jenkins in his lifetime, and those claiming under him. Such is the inevitable result of the establish-

ment of general principles. Partial inconvenience is the sure consequence; still the production of general good outweighs the particular hardship. "Partial evil is universal good." I have long entertained the opinions here expressed. I have, I fear, explained the grounds of them with too much prolixity. Public duty required a full exposition of the reasons upon which this judgment is rendered.

After due deliberation, the result is, that we think the Court was correct in its judgment throughout, and that there was enough on the record to sustain fully the jurisdiction of the Court of Ordinary of Troup County, in ordering a sale of the real estate of Howell W. Tucker, deceased, and the validity of the plaintiff's title to the land in dispute derived under it.

Judgment affirmed.