OUSLEY & BROTHER *v.* BAILEY & COMPANY.

A purchaser of land at judicial sale, acting in good faith and without notice, acquires title as against a prior conveyance by the owner, unrecorded at the time of the making and confirmation of such sale.

Submitted June 4, — Decided August 9, 1900.

Petition for injunction. Before Judge Bennet. Coffee superior court. May 26, 1900.

*Leon A. Wilson*, for plaintiffs.
*Toomer & Reynolds*, for defendants.

LITTLE, J.   Ousley & Brother filed a petition in the superior court of Coffee county, by which they sought to enjoin Bailey & Company from entering and cutting the timber on lot of land, number 438 in the 6th district of said county, alleging that they had a perfect title to the same. The defendants, admitting that it was their purpose to cut such of the timber on said lot as was suitable for sawmill purposes, denied that petitioners had any title to the same, but averred that the defendants had a full legal title to said land and the timber thereon. At the hearing the following agreed statement of facts was submitted in connection with the pleadings: On March 29, 1842, the State of Georgia granted to Abraham Hargraves lot of land 438 in the 6th district of Appling, now Coffee county. On December 30, 1853, Abraham Hargraves, for a proper consideration, conveyed said lot to Christopher Hargraves; this deed is regular, and was properly recorded. On December 4, 1877, John Fussell, the duly qualified administrator on the estate of C. C. Hargraves, for a proper consideration, conveyed this lot to Hardy Summerlin; and the deed is regular, and has been properly recorded. On May 4, 1887, Hardy Summerlin made a deed, for a proper consideration, conveying to James McDonald all of the timber on said lot of land suitable for sawmill purposes; this deed is properly witnessed, and is duly recorded. On June 20, 1890, James McDonald, who was at that time solvent, made a deed, in consideration of the sum of three hundred dollars, to E. J. Stokes, F. M. Stokes, and W. E. Burbage, doing a turpentine business under the firm name of Stokes Broth-

ers & Company, in the county of Coffee, whereby James Mc-
Donald did lease and convey unto the said Stokes Brothers &
Company, their heirs and assigns, lot of land and timber num-
ber 438, lying in the 6th district of Coffee county, for a term
of three years, beginning at whatever time the above-leased
timber was boxed, the parties of the second part agreeing to re-
turn unto James McDonald, his heirs and assigns, the above-
leased premises, at the expiration of said lease, in as good con-
dition as could be expected from such usage.    This deed is
properly executed, and was filed for record on January 7, 1895,
and recorded on the same day.    On January 18, 1893, Stokes
Brothers & Company made a deed, for a valuable considera-
tion, conveying the same property mentioned in the McDonald
deed to O. H. Lowther; this deed was properly recorded on
January 7, 1895.    The same property was conveyed by O. H.
Lowther by proper instrument of writing, dated December 30,
1896, and recorded December 30, 1896, duly executed and for
a proper consideration, to Williford & Loring, a firm composed
of R. F. Williford and G. W. Loring, and Williford & Loring,
in turn, by proper instrument of writing, dated October 10,
1898, and recorded October 22, 1898, for a valuable considera-
tion, conveyed the same property to Chancey & Purdom, who, in
turn, for a proper consideration and by proper instrument of
writing, dated October 4, 1899, and recorded on the same day,
conveyed the premises to B. F. Ousley & Brother, the plaintiffs.
In the fall of the year 1898, Chancey & Purdom, a firm com-
posed of A. H. Chancey and J. O. Purdom, entered upon said
lot of land and boxed the sawmill timber thereon for turpentine
purposes (this was the first entry made upon said lot of land
for such purposes), and worked the same one year, that is, until
October 4, 1899, at which time they sold out to R. F. Ousley &
Brother, who have since been working the same for turpentine
purposes.    The second year of said working will expire in the
fall of the present year; and Ousley & Brother claim the
right, under the lease, to work it an additional year after the
expiration of the present year.    While Chancey & Purdom were
in possession, working the same for turpentine purposes,
Bailey & Company having actual notice of such possession and
the working of the said timber for such purposes, R. F. Ousley

& Brother purchased the turpentine interests from said parties for the remaining period mentioned·in the McDonald lease. On May 1, 1900, Bailey & Company notified plaintiffs in writing, as follows: "We are now about ready to cut the timber on lot 438. We have delayed as long as we could, and will still delay as much as possible; but we are liable now to go into it any day; and this is to let you know, so that you will not go to any extra expense with your boxing." After this notice was given the petition for injunction was brought.

In the latter part of 1893, James McDonald, who was then engaged in the cutting and manufacturing of lumber at McDonald's Mill, Coffee county, was placed in the hands of a receiver at the suit of the Downing Company and others, as provided for under the Civil Code, §§ 2716 and 2721, Henry T. Kennon being appointed temporary receiver; at the March term, 1894, of Coffee superior court a decree was rendered in said cause, appointing Henry T. Kennon as master commissioner therein, who was instructed by order and decree of the superior court, on the 8th day of November, 1894, to proceed to advertise for sale all of the property of James McDonald, and dispose of and offer all of the assets and property of James McDonald on the 10th day of December, 1894, before the court-house door at Douglas, Coffee county. Said master commissioner proceeded to advertise certain property, in accordance with the terms of said order of November 8, 1894, and did on the 10th day of December, 1894, during the legal hours of sale, before. the court-house door of Coffee county, expose and offer for sale all of said property, real, personal, and assets of every description, as the property of James McDonald; at said sale H. W. Reed became· and was the highest and best bidder therefor, and all of the property mentioned in the deed hereinafter stated, as the property of James McDonald, was knocked off to him at and for the sum of $58,173.90. Among the property so sold was all of the timber suitable for sawmill purposes on lot of land 438 in the 6th district of Coffee county. In accordance with said decree of November 8, 1894, said sale was duly confirmed, and thereupon, on the 14th day of December, 1894, Henry T. Kennon, master commissioner under order of the court, made a deed to H. W. Reed, conveying the property sold by him

under the decree in said cause, including the said timber for sawmill purposes on the said lot of land 438 in the 6th district of Coffee county, which deed was properly witnessed, and was filed for record on December 21, 1894, and on the 8th day of January, 1895, was duly recorded.   On the 14th day of December, 1894, H. W. Reed executed and delivered to J. S. Bailey & Company a deed, consideration $75,000, conveying all of the property mentioned in the deed to H. W. Reed by H. T. Kennon, master commissioner aforesaid, among which property so conveyed was all of the timber suitable for sawmill purposes on lot of land 438 in the 6th district of Coffee county, which deed was properly executed, and was filed for record on January 3, 1895, and recorded on January 9, 1895.   At the time H. W. Reed took said deed from Kennon, master commissioner, and at the time J. S. Bailey & Company took said deed from H. W. Reed, neither had notice or knowledge, actual or constructive, that on the 20th day of June, 1890, James McDonald had made a deed hereinbefore mentioned to the said Stokes Brothers & Company, nor did they have any notice or knowledge, actual or constructive, at that time, of the conveyance of the same premises from said Stokes Brothers & Company to O. H. Lowther.

It will be seen from the foregoing statement, that both the plaintiffs and defendants trace their title to McDonald, the plaintiffs holding by a direct chain of title under a conveyance made by McDonald on June 20, 1890, while the defendants claim through Reed under a deed made by the master commissioner, conveying all of the property of McDonald to Reed, on December 14, 1894.   The position, however, is taken by the defendants, that at the time Reed became the purchaser of the property of McDonald, and at the time they purchased the same property from Reed, neither Reed nor themselves had any notice of the prior conveyance made by McDonald to Stokes Brothers & Company in 1890, nor of the several conveyances constituting the chain of title of the plaintiffs, nor were any of the conveyances in that chain of title on record; and hence they were not chargeable with notice that McDonald had conveyed the timber prior to their purchase of the land; and that inasmuch as the conveyances by the commissioner to Reed and by Reed to the defendants were duly recorded before any of the

conveyances in the chain of title of the plaintiffs, the convey-
ance to the latter, of the timber on the lot in question, is by
law postponed to the title of the defendants.   To this, however,
it is replied that, prior to the time when Reed purchased the
property of McDonald at the commissioner's sale, McDonald
had by proper conveyance divested himself of all title to the
timber on the lot of land, and that by his purchase Reed only
took such title to the lot of land in question as McDonald had
at the time.   These contentions, under the admitted facts in
this case, raise only one question, and that is, whether the pro-
visions of our law found in the Civil Code, § 2778, declaring
when instruments requiring record take effect, are applicable
to conveyances made under a judicial sale.   Just here it may
be well enough to refer to the distinction which exists be-
tween judicial and execution sales.   Mr. Rorer, in his Treatise
on the Law of Judicial and Execution Sales, declares that a
judicial sale is in contemplation of law a sale made pendente
lite; that all the authorities concur that judicial sales are sales
made by the court, and in which the court is the vendor; that
it matters not to the contrary that such sale is made through the
instrumentality of a master, a commissioner, or other function-
ary appointed thereto by the court; that as such sales are not
valid or binding, and confer on the purchaser no right to the
property, until confirmed by the court, and as the confirmation
is the judicial act of the court, such a sale becomes a judicial
sale.   Rorer, Jud. Sales, §§ 1, 4, 28.   The same author, how-
ever, declares (§ 590) that, in making ordinary execution sales
simply by virtue of his office, the sheriff or marshal acts as
the ministerial officer of the law, and not as the organ of the
court; that the officer is not the instrument or agent of the
court as in judicial sales; that the court is not the vendor, but
that the authority of the sheriff or marshal rests on the law
and on the writ; that the functions of the court terminated at
the rendition of the judgment therein, and that the law is the
officer's only guide.   Attention is called to this distinction only
because, under the uniform rulings of this court, the registra-
tion acts of this State are applicable in cases of sales made
by sheriffs under execution, on the theory that the officer rep-

resents in such sales the defendant in execution. *McCandless* v. *Inland Acid Co.*, and authorities cited, 108 *Ga.* 618.

But inasmuch as in judicial sales, such as that under which the defendants in error claim title, the sale is made by the court, the question arises, whether the same provisions of law protect the bona fide purchaser for value. We think they do. The statute is plain that any instruments conveying title to land or creating liens on land, which are required to be recorded, take effect only from the time they are filed for record, as against the interest of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the same property. It will be noted that the terms used in describing the persons who are protected have been very much broadened by the act of 1889, on which the section of the code we are referring to is based. Formerly it was the settled rule in this State that the holder of a junior deed taken in good faith, without notice of a former conveyance, and recorded within twelve months from the time of its execution, would prevail against the holder of an unrecorded conveyance. *Wise* v. *Mitchell*, 100 *Ga.* 614. But as the law now exists, a third party acting in good faith without notice, who has acquired a transfer of property and whose deed has been recorded, acquires a title as against a prior conveyance of the same property unrecorded at the time he acquired a title. It would seem, from the language used, that a purchaser at judicial sale comes within the rule stated in the code, which is evidently founded on the declared policy of the registry laws, which is, that title, and all that affects it, should be disclosed by the public records; from whence the rule is obtained that a purchaser may rely upon the title as it appears of record, and that he will be protected against unrecorded conveyances, outstanding equities, secret liens and conditions, of which he has no notice. Rorer, Jud. Sales, § 154, and cases cited in note 1 on p. 242. Construing a statute of Illinois, which declares that "all deeds, mortgages, or other instruments of writing, which are required to be recorded, shall take effect and be in force after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice," etc., the Supreme Court of the United States, in the case of McNitt v. Turner, 83 U. S. 351,

said, that the term "purchasers," as used in the statute, included purchasers at judicial sales, and that a deed not filed for record is as to them wholly without effect. It must be ruled, therefore, under the broad words of our statute as well as on the authorities cited, that a purchaser at a judicial sale, for value and without notice, whose deed is duly recorded, acquires title to real property, as against a prior conveyance from the owner unrecorded at the time of the sale. The trial judge did not err in refusing the injunction.

*Judgment affirmed. All the Justices concurring.*