## HENDERSON *v.* ARMSTRONG.

A deed to described wild land, executed by the general devisees of the deceased former owner, taken by the vendee therein for value and without notice of a deed to the same land executed by the testator, although

recorded before the registry of the older deed, does not obtain priority over such senior conveyance.

Submitted May 25,—Decided August 8, 1907.

Equitable petition. Before Judge Martin. Wilcox superior court. March 31, 1906.

J. W. Armstrong and others brought suit, in the superior court of Wilcox County, against Parker A. Henderson, to enjoin the defendant from cutting the timber upon lots of land numbers 210 and 212 in the 8th district of that county, and for damages for the cutting of timber thereon. At the trial the plaintiffs amended the petition so as to claim damages for timber cut from the land after the filing of the suit. By agreement of the parties, the case was tried by the judge, without the intervention of a jury, under a written agreement as to the facts. It was admitted that the timber on the two lots of land had been cut by defendant during the pendency of the suit, and that the question of damages for the cutting of the same by the defendant was to be included in the suit and to be determined by the court in deciding the case. It was also admitted that the value of the timber cut by defendant was $800. The two lots were what is known as wild land, no one being in possession of either until defendant entered upon them and began to cut the timber. The lots were granted by the State to Herschel V. Johnson on February 6, 1847, and he conveyed the same to James W. Armstrong, on October 15, 1847. The deed from Johnson to Armstrong was recorded February 12, 1900. Plaintiffs are successors in title to James W. Armstrong. Herschel V. Johnson executed his will on August 15, 1880, in which he devised all his property, of every description, to his wife, Ann F. Johnson, during her life, with full power to dispose of the same in any way that she might desire, by gift or sale during her life, or by will at her death, with remainder to his children in whatever property should remain undisposed of at the death of Mrs. Johnson. Mrs. Ann F. Johnson survived her husband, and died without having disposed of the land in question. On December 23, 1899, the remaindermen conveyed the lots to the Georgia Title Guarantors Company. This deed was recorded on December 28, 1899. The Georgia Title Guarantors Company conveyed the property to P. A. Henderson on June 13, 1901, and the deed was recorded on that date. Upon this state of facts the judge ren-

dered a judgment in favor of the plaintiffs and against the defendant for the sum of $800 principal, and $242 interest, as damages for cutting the timber, further finding that plaintiffs were the true owners of the land.   To this judgment the defendant excepted.

C. J. Haden and E. D. Graham, for plaintiff in error.

M. B. Cannon and Hal Lawson, contra.

FISH, C. J. (After stating the facts.)   The facts in this case are undisputed, and counsel agree that the case is controlled by a single question of law.   The question upon which the case turns is, whether in a competition between a deed executed by the owner of land and a deed to the same land executed, after his death, by those claiming title under a general devise of the whole of his estate, the older deed is defeated, when it appears that it was not recorded until after the younger deed was executed and duly recorded, and that this latter deed was taken without notice of the existence of the other.   This is purely a question of statutory construction, dependent for its solution upon the meaning to be given our statutes in reference to the recording of deeds.   For it is perfectly clear that, without the assistance of a statute, one who purchases land from another who has no title can acquire no title to the land by such purchase.   The remaindermen under the will of Herschel V. Johnson had no title to the lands in controversy to convey to the Georgia Guarantors Company, as such lands were no part of his estate at the time of his death, he having parted with the title to the same during his lifetime.   As they had no title to convey, their grantee acquired none by the conveyance, and hence had none to convey to Henderson, the defendant in this case; unless the fact that the Georgia Guarantors Company purchased these land lots from the devisees in remainder of the estate of the deceased former owner, without actual or constructive notice of the existence of his deed to James W. Armstrong, and then had its deed recorded before the Armstrong deed was placed upon record, had the effect of defeating the Armstrong title. Prior to the act of October 1, 1889 (Acts 1889, p. 106), there had been no material change in the law upon the subject under consideration since the passage of the act of December 25, 1837 (Cobb's Dig. 175).   That act provided, that "in all cases where two or more deeds shall hereafter be executed by the same person or persons, conveying the same premises to different persons, the

one recorded within twelve months from the time of execution (if the feoffee have no notice of a prior deed unrecorded at the time of the execution of the deed to him or her) shall have preference; and if all be recorded or not recorded within the time specified, the eldest deed shall have preference." The section upon the subject in the Code of 1863 read as follows: "Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land lies, within one year from the date of such deed. On failure to record within this time the record may be made at any time thereafter; but such deed loses its priority over a subsequent deed from the same vendor, recorded in time, and taken without notice of the existence of the first." Code of 1863, §2667. Exactly the same provisions appear in the Code of 1868, §2663, the Code of 1873, §2705, and the Code of 1882, §2705. The act of 1889 provided, "That deeds, mortgages, and liens of all kinds, which are now required by law to be recorded in the office of the clerk of the superior court of each county within a· specified time, shall, as against the interests of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the same property, take effect only from the time they are filed for record in the clerk's office. And the said clerk is required to keep a docket for such filing, showing the day and hour thereof, which docket shall be open for examination and inspection as other records of his office." This is now section 2778 of our present Civil Code. The old law relative to the registry of deeds, as modified by the act of 1889, appears in the Civil Code, §3618, in the following language: "Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land lies. The record may be made at any time, but such deed loses its priority over a subsequent recorded deed from the same vendor, taken without notice of the existence of the first." It will be observed that the change wrought in the old law upon this subject, as it stood in the several codes prior to the present one, is simply as to the time when a deed may be recorded so as not to lose its priority over a subsequent deed from the same vendor duly recorded. The old law allowed one year in which to record a deed, during which time its priority over a subsequent recorded deed from the same vendor was preserved; whereas, under the law as·

it has stood since the act of 1889, no time is prescribed within which a deed may be recorded so as to preserve its priority, and the question of precedence between two deeds from the same vendor depends, when the deed last executed was taken without notice of the first, upon priority of record. Of course, construing sections 2778 and 3618 of the Civil Code together, a deed is, when in competition with another, to be considered as recorded at the time when it is duly filed for record. Under the act of 1837, deeds made by the same person or persons were brought into competition with each other; deeds made by different persons did not compete. But in construing this act it was held that "A purchaser at sheriff's sale, who has his deed first recorded, will gain the same preference over an unrecorded deed, as if he had bought directly from the debtor himself" (*Ellis* v. *Smith,* 10 *Ga.* 253); and that "a purchaser at an administrator's sale, who has had his deed first recorded, will have the same preference over an unrecorded deed as if he had bought of the intestate in his lifetime." *Tucker* v. *Harris,* 13 *Ga.* 1. The reasoning of the court in the first of these cases was this: "The effect of a sale by the law, in this respect, is just the same as if made by the individual, whose agent or trustee the officer becomes, to make the transfer. All the defendant's estate is sold. The purchaser takes his place." In the second case the first was cited, and it was held that "The rule and the reasoning in that case apply with full force to a purchaser at an administrator's sale." But in *Webb* v. *Wilcher,* 33 *Ga.* 565, it was held that the provisions quoted above from the act of 1837 were "inapplicable where an unrecorded deed [came] in competition with a junior deed to the same property, executed by the heir at law of the first feoffer, duly recorded." In the opinion Jenkins, J., said: "The statute by its terms applies only to 'cases where two or more deeds shall be executed by *the same person or persons,*' for the same premises. In the case at bar the older deed was executed by William Tomlinson, and the junior by Rhoda Gilbert, two different persons. From this difficulty the plaintiff in error insists that he is relieved, by the fact that Rhoda Gilbert, at the time of her conveyance, held as heir-at-law of William Tomlinson; and he relies upon the rulings of this court in *Ellis* v. *The Lessee of Smith,* 10 *Ga.* 253, and in *Tucker* v. *Harris,* 13 *Ga.* 1." He then discussed the rulings made in those cases and the principle upon

which they were based, and said: "What is that principle? That the actual salesman in each [case] acted in a representative or fiduciary capacity, and by his deed transmitted not his own title, but that of the party he represented. The sheriff transmitted the title of the defendant in execution, the administrator that of his intestate. Can the same thing be said of Rhoda Gilbert's convey-- ance? By no means. She thereby transmitted not the title of William Tomlinson, but her own title. It matters not that she derived title from Tomlinson, nor does it matter how she derived it, whether by deed or by inheritance. Before her conveyance to Smith the title had become vested in her. It was only *her* title that could then be transmitted, and this makes her case to differ from those cited and considered." While in that case the act of 1837 was under construction, it is evident that the reasoning of the court and the principle upon which it based its decision would apply equally as well in a case involving the construction of the statute as it stood after the adoption of the first code, wherein the words, "from the same vendor," were used in describing the deeds, instead of the words, "executed by the same person or persons," which were employed to describe the deeds in the original act. But it has been thought that the act of 1889 had the effect of opening the door of competition between deeds to the same land, to junior recorded deeds which could not, before the passage of that act, have competed with senior unrecorded deeds. See *Ousley* v. *Bailey,* 111 *Ga.* 783, 788; *Equitable Loan Co.* v. *Lewman,* 124 *Ga.* 190, 202.

In neither of the cases just referred to was it necessary, however, to so construe the act in order to make the decision rendered therein. In the case first cited, the ruling was that "A purchaser of land at judicial sale, acting in good faith and without notice, acquires title as against a prior conveyance by the owner, unrecorded at the time of the making and confirmation of such sale." This ruling was merely in accordance with the rulings made in *Ellis* v. *Smith,* and *Tucker* v. *Harris,* supra, which would have controlled the question presented, whether the act of 1889 had ever been passed or not. "For," as was held by the court in the *Ellis* case in reference to the priority of competing deeds to the same property, "the effect of a sale by the law, in this respect, is just the same as if made by the individual. . . All the defend-

ant's estate is sold. The purchaser takes his place. The mischief of an unrecorded deed is the same to him as to a private purchaser. He examines the title, and, from anything that appears, the defendant is the undisputed proprietor, while in fact there is an outstanding deed from him, which would sweep off the property." While the court in that case said that the officer making a sale under execution becomes "the agent or trustee" of the defendant in execution, "to make the transfer," it is evident that he only becomes such by appointment of the law, and, in this respect, a master, commissioner, or receiver, acting under orders of the court, is as much "the agent or trustee" of the person whose property he is ordered by the court to sell as is a sheriff, who sells property under execution, the "agent or trustee" of the defendant in execution. As pointed out by Judge Jenkins in *Webb* v. *Wilcher,* supra, in discussing the rulings in the cases cited above from 10 and 13 *Ga.,* the actual salesman in each case by his deed transmitted, not his own title, but that of the party whose property he sold. "The sheriff transmitted the title of the defendant in execution, the administrator that of his intestate." And he drew the distinction between those cases and the one with which he was dealing by showing that the heir-at-law, in that case, by her deed, transmitted, not the title of her ancestor, but her own title. By a judicial sale the title transmitted is that of the person whose property has been seized and sold by the court; consequently, such a sale, when the question of priority of deeds to land thus sold is concerned, stands upon the same footing where a deed from a sheriff, or a deed from an administrator, stands when such question is involved. The vendor in each case is, within the meaning of the Civil Code, §3618, the person whose title was sold and conveyed. The purpose and the effect of recording a deed is to carry notice, to all whom it may concern, that the title to the land therein conveyed has passed from one designated person to another designated person, and the person from whom the title passes, by a deed of bargain and sale, is the "vendor" within the meaning of that word as used in section 3618. If the act of 1889 had never been passed, it would have been clearly subversive of the purpose and meaning of that section of the Civil Code to have held that because the court, in a particular sense, is said to be "the vendor" in a deed executed in pursuance of a judicial sale, as distinguished

from a sale under execution, therefore such a deed and a deed to the same land made by the person as whose property the court seized and sold it are not, in contemplation of the statute, "from the same vendor." Under such a holding there never could be competition between such deeds, and a bona fide purchaser taking the younger deed, without notice, actual or constructive, of the older one, and having his deed first recorded, could obtain no title against the senior unrecorded deed. And it would not make any difference whether the younger deed was the one made in pursuance of the judicial sale or not.

What the learned judge who delivered the opinion of the court in *Ousley* v. *Bailey,* supra, said in reference to the effect of the act of 1889 upon the previously existing law was unnecessary to reach the decision there rendered. The same may be said with reference to the statement by another learned judge, now upon the bench, in *Equitable Loan* and *Security Company* v. *Lewman,* supra, with reference to the effect of the act of 1889 upon competition between a recorded deed from an heir or devisee and an unrecorded deed from an ancestor. His remarks were based upon the ruling in *Holder* v. *American Investment Company,* 94 *Ga.* 640, which was made after the passage of the act of 1889 and is in apparent conflict with the decision in *Webb* v. *Wilcher,* supra. The ruling in the *Holder* case is contained in the fourth headnote, wherein it was held that the statute giving priority to a junior recorded deed over a senior unrecorded deed "applies where the senior deed was made by the testatrix and the junior by her devisee." No opinion was filed in that case, the rulings being embraced in headnotes only. No reference is made in any of the headnotes to the act of 1889, and whether the existence of that act influenced the decision of the court is a matter for conjecture only. The inference that it did must have arisen from the apparent conflict between that case and the earlier one above cited. But, after a careful consideration of the matter, we have been unable to see how that act changed the law with reference to the priority of deeds of bargain and sale to the same land under the recording acts. In *Donovan* v. *Simmons,* 96 *Ga.* 340, 346, in which case it was held that the registry act of 1889 did not create any new competition between deeds of bargain and sale and the liens of judgments, Judge Hart, who delivered the opinion of the court, speaking of this act in connection with

such deeds, said: "The law as to deeds of this character is unchanged by it. The danger of a failure to record a deed is the exposure of it to defeat by a subsequent vendee without notice of the prior purchase. The only change made in the law by the act of 1889, so far as deeds are concerned, is to fix their time of going into effect and becoming operative relatively to the interests of certain persons." In *Toole* v. *Toole,* 107 *Ga.* 472, where it was held that a junior voluntary deed, though duly recorded and taken without notice of a prior voluntary deed executed by the same grantor and not recorded, does not obtain priority over such senior deed, Chief Justice Simmons, in speaking of the contention of counsel for plaintiff in error, that sections 2778, 3530, and 3618 of the Civil Code "are broad enough to protect grantees under voluntary deeds, because two of them declare in substance that *all* deeds must be recorded," said: "It will be observed, however, that in the latter part of section 3618, where it provides a penalty for failure to record the first deed, it is declared that 'such deed loses its priority over a subsequent recorded deed from the same *vendor.*' The word 'vendor' was evidently used with reference to a deed of bargain and sale, based upon a valuable consideration. If it had been intended to include voluntary deeds, the word 'grantor,' and not 'vendor,' would have been used." It will be observed that the word "vendor," as used in the Civil Code, § 3618, was here construed in its literal sense, that is, as meaning the party by whom a sale is made (Anderson's Law Dict.), or the person who transfers property by sale (Black's Law Dict.). And it was, in effect, held that although two deeds to the same land may be from the same grantor, they can not compete, under the statute, unless they are also from the same vendor. This is inconsistent with the idea that the effect of the act of 1889 was to broaden the meaning of the terms used in the existing statute to describe what deeds could compete thereunder for priority.

As we have said, the ruling in *Holder* v. *American Investment Company,* supra, appears to be in conflict with the decision in the earlier case of *Webb* v. *Wilcher;* and if so, the older case would prevail. The present case, however, differs from the *Holder* case in this material respect: there the owner of a half interest in certain land conveyed a small portion of it, and afterwards devised the entire half interest, described in it. It was

held that the devise imported on its face a gift of all of such interest in the land described, and, therefore, conflicted with the former deed. In the case at bar, Herschel V. Johnson conveyed the land in controversy to Armstrong in 1847. In 1880 he made a will by which he devised and bequeathed to his wife "all [his] property both real and personal, of ·every description," during her life, with remainder in "whatever remains of said property undisposed of by her as herein provided for" to his children. This does not purport on its face to devise any specific property, or to describe that now involved in controversy. The testator only sought by his will to pass all of his property, and this property was not his. There is nothing to indicate that he either actually had any interest in it when he made the will, or that he claimed to have any. It was wild land, in the possession of no one. So that, without more, a mere comparison of his previous deed with his will would lead to the conclusion that he did not devise this property at all. If not, then of course the deed from his devisees would not take precedence over his antecedent deed.

*Judgment affirmed. All the Justices concur.*