DONOVAN *et al.*, administrators, *v.* SIMMONS *et al.*

1. The registry act of 1889 (Acts of 1889, p. 106), providing "when transfers and liens shall take effect as against third parties," does not create a new competition between deeds of bargain and sale and the liens of judgments. Its scope is to fix the time when, and the manner in which, liens acquired by contract or obtained by operation of law are to take effect, and to settle their priorities. Inasmuch as the word "lien," as used in the phrase "who may have acquired a transfer or lien binding the same property," occurring in the first section of that act, applies only to liens acquired by contract, and not to those obtained by judgment, the consequences of a failure to record a deed of actual purchase are exactly the same now as they were prior to the passage of that act; and accordingly, while the failure to record such a deed might operate to defeat the conveyance as to one who purchased subsequently of the same vendor without notice of the prior conveyance, a judgment obtained against the grantor subsequently to the conveyance, but entered upon the general execution docket prior to the record of the deed, would not, merely by virtue of such entry, become a lien upon the property previously conveyed.

2. In view of the principles above announced, it is immaterial whether the claimants were, or were not, after their purchase, in actual possession of the lot levied upon, since their unrecorded paper title was of itself sufficient to support the claim as against the plaintiff's judgment.

3. When the trial judge renders a correct judgment, even if in his opinion filed therewith a wrong reason therefor is given, and a general exception is filed to the judgment, this court will look to the record and sustain the judgment, if right, notwithstanding the reason assigned therefor by the trial judge may have been erroneous.

June 10, 1895. The Chief Justice being disqualified, Judge HART, of the Ocmulgee circuit, was designated to preside.

Levy and claim. Before ALEX. C. KING, judge *pro hac vice*. Fulton superior court. September term, 1894.

An execution against T. J. James was levied upon a parcel of land to which a claim was interposed by T. J. and N. R. Simmons. The case was submitted to the court upon an agreement as to the facts, without the intervention of a jury; and judgment was rendered for the claimants. The facts agreed upon were as follows: The lot was bargained to be sold on April 9, 1890, by James to claimants, for $8,000, at which time they paid $2,666 of the purchase price and took bond for title. The lot had a fence on both sides and at the back end. There was a cut across the front, and no fence there. There was a small one-room house on the lot on April 9, 1890, which was occupied by a tenant paying some small amount a month as rent. He attorned and paid rent to claimants, and remained in the house about one year. After that it was unoccupied. Claimants made no improvement, nor erected any fence on the lot, nor did they live on it. On the 11th day of May, 1891, claimants finished paying for the lot, and T. J. James made and delivered to them a deed by which he conveyed said lot to them in fee simple under a general warranty of title. In the month of January, 1893, claimants placed the lot in the hands of Goode & Beck, real estate agents, for sale, and about February 12, 1893, Goode & Beck put up in a conspicuous place on the lot a board sign having on it the words, "For sale by Goode & Beck, corner of Peachtree and Marietta streets." There was nothing else on the sign. It remained up several months. Neither plaintiff in *fi. fa.* nor his counsel had any notice of any of the above stated facts, until about November 22, 1893, when the deed from James to claimants was filed for record. The lot levied on and claimed in the above stated case is on West Peachtree street, about one half mile outside of the city limits, and contains about four acres. The title of this lot was believed by plaintiff in *fi. fa.* and his counsel to be in

T. J. James before suit was brought on the note on the 19th day of August, 1892, such belief being founded on the fact that T. J. James was shown to be the owner by the deed from J. S. Johnson of June 3, 1884, and of record in the office of the clerk of the superior court of Fulton county, in deed book UU, page 576. The records showed no conveyance of said lot by James after he bought it from Johnson. On April 11th, 1891, T. J. James made a note for $3,744.71, payable January 1, 1892, to plaintiff in *fi. fa.* Suit was brought on that note in the city court of Atlanta on August 19, 1892, and judgment rendered thereon on April 18, 1893, and execution issuing on said judgment was entered on the general execution docket in the clerk's office of the superior court of Fulton county, on April 19, 1893. Execution so issued was levied on said lot, together with other property, on October 14, 1893, and after advertisement by the sheriff the property was exposed for sale on the 1st Tuesday in November, 1893, but no sale was made as there were no bidders. The property was again advertised to be sold by the sheriff under the *fi. fa.* on the 1st Tuesday in December, 1893, and on December 1, 1893, the claim was filed.

H. B. TOMPKINS and ALSTON & PALMER, for plaintiffs.
JOHN L. HOPKINS & SONS, *contra.*

HART, Judge.

The facts are sufficiently set forth in the official report. This case was tried before the Hon. Alex. C. King, judge *pro hac vice* in the court below, without the intervention of a jury, on an agreed statement of facts. In deciding the case the judge viewed it from two points of observation: first, as to the general rule of law determining the status of judgments; and secondly, as to how the facts affected the application of the rule in this particular case. From the legal standpoint he

ruled favorably to the contention of the plaintiffs in *fi. fa.*, and nothing else appearing, would have subjected the land to the execution; but viewing it from the second point of observation, he thought the facts prevented the application of the general rule, and held the land not subject to the execution. The question of law arises on the inquiry whether, by the act of 1889 (Acts of 1889, p. 106), a judgment against the maker of an unrecorded deed, and junior in date to such deed (the execution issuing from the judgment having been duly entered upon the general execution docket provided for by the act), becomes, by reason of the failure to record the deed, a lien upon the property thereby conveyed, the vendee not having gone into actual possession. This is the precise question made for our review by the plaintiffs in error, who were the plaintiffs in *fi. fa.* in the court below. For convenience of expression, a judgment, the execution issued from which has been duly entered as above stated, will hereinafter be designated as a "recorded judgment."

The judge below held the property levied on not subject to the execution, but, in his written opinion which was made a part of the record of the case here, he held, that in a contest between the deed and the judgment, the latter although younger would, because recorded, have become a lien on the land conveyed in the elder and unrecorded deed, but for the fact that the evidence in the case showed the vendees went into actual possession of the land before the rendition of the judgment which, in his opinion, served to dispense with the necessity of its record; in other words, the judge held that under the first section of the registry act of 1889, a recorded junior judgment against the vendor in an unrecorded deed became operative as a lien upon the property previously conveyed, unless the deed was saved from the necessity of record by actual possession of the

vendee thereunder. Having found that claimants were in actual possession of the land, by reason of which fact the law charged notice, the judge concluded that the lien of the judgment was in consequence impotent, because not acquired by persons designated in the act as "third parties acting in good faith and without notice." He accordingly held the land not subject, and for the reason alone that the possession of the claimants at the time of the rendition of the judgment against the defendant in *fi. fa.* was fatal to the right of the judgment to subject the property. We have been thus explicit in stating this question, and particular in reference to the written opinion of the judge in the court below, to enable us more fully to discuss the act of 1889, the construction of which we recognize as being of vast importance to the bar and to the public.

The plaintiffs in error bring this case here on four assignments of error, as follows: first, the court erred in finding in favor of claimants, T. J. and N. R. Simmons; second, in not finding against claimants, and dismissing the suit at their cost; third, in not finding for plaintiffs in *fi. fa.*, Wm. O. Donovan and S. C. Evans, on all the issues involved; fourth, in finding that the agreed statement of facts showed the plaintiffs in *fi. fa.* had any notice of the claimants' title. The first, second and third assignments of error are simply three different ways of saying the same thing, and we will so treat them. This brings us to the construction of the act of 1889, entitled "an act to provide when transfers and liens shall take effect as against third parties." This act, one branch of it, was before this court for construction in two cases reported together in 93d *Ga.* (page 768), namely the case of *Bailey* v. *Bailey*, and the case of *Heard* v. *Hubbard*, Justice LUMPKIN delivering the opinion of the court. The question now before the court, namely, whether or not the lien of a judgment against the grantor in a deed,

obtained subsequently to the deed but entered upon the general execution docket prior to the record of the deed, attaches to the property conveyed by the deed, was not involved in either of these two cases. In them, the precise point ruled (as assisting now in the further construction of the act) was, that though in each the claimants' deed was not recorded before the rendition of the plaintiffs' judgment, yet as they were recorded before the plaintiffs' executions, respectively, were entered upon the general execution docket, the liens of the judgments did not attach to the property conveyed; and that this would be true even though the grantees in the deeds recorded them with notice of the subsequently acquired judgments against their grantors. This proposition would seem unquestionably correct. The vendee who purchases land of his vendor and takes his deed, but fails to record the deed until his vendor has been sued by some one and a judgment entered up, stands in a very different attitude from that of the vendee who buys land knowing of the existence of a judgment against his vendor, but seeks to protect himself because of a failure to record that judgment. The last vendee would not be a "third party acting in good faith and without notice," and the judgment lien would attach to the land whether he did or did not record his deed. But why should the vendee who purchases land of the person who owns it at the time and has a right to sell it, but who subsequently has a judgment rendered against him, be defeated of his 'prior purchase? Is it sufficient to say, his laches in failing to record his deed is to be charged with such a penalty? Had he permitted his vendor to remain in possession of the land, thus making the possession and the ownership harmonious so far as the record disclosed, and third parties were induced *to contract with* the apparent owner on the assumption he was the true owner, then it might be right to visit upon

the careless vendee the consequences of his negligence, rather than upon an innocent person. We do not think the act of 1889 creates any new competition between deeds of bargain and sale and the lien of judgments. The law as to deeds of this character is unchanged by it. The danger of a failure to record a deed is the exposure of it to defeat by a subsequent vendee without notice of the prior purchase. The only change made in the law by the act of 1889, so far as deeds are concerned, is to fix their time of going into effect and becoming operative relatively to the interests of certain persons. The first section of the act declares, "that deeds, mortgages and liens of all kinds, which are now required by law to be recorded in the office of the clerk of the superior court of each county within a specified time, shall, as against the interest of third parties acting in good faith and without notice, who may have acquired a transfer or lien binding the same property, take effect only from the time they are filed for record in the clerk's office." It is evident the word "lien," as here used, has reference exclusively to liens acquired by contract. "Lien," is a generic term, and includes both liens acquired by contract and by operation of law; but the context clearly indicates it is used here in its restricted sense as applicable only to contractual liens. To say a judgment must be acquired in good faith and without notice, to be a valid lien upon the debtor's property, would be to engraft a new condition upon judgments. It matters not after judgment with what kind of faith a creditor was prompted to sue his debtor. It may be the creditor's motive was to obtain judgment so that he might levy upon the home of his debtor and turn him and his family into the streets to gratify a fiendish desire to see them in beggary and want, yet this would furnish no valid legal reason to defeat the judgment; in other words, the motive which prompts a cred-

itor to sue his claim to judgment, is buried when a judgment is rendered in his favor. The motive dies when the judgment is born. Again, to hold that a judgment acquired shall be a lien upon land conveyed in a prior unrecorded deed, would be to hold that a judgment shall be a lien upon other than the defendant's property. The sale of land, although the deed may not have been recorded, as between the parties to the contract, and indeed as to all the world, is a parting of the right of title and ownership from the grantor to the grantee; and to hold that an after acquired judgment against the grantor shall become a lien upon the property conveyed, would be to add to judgments a quality never possessed heretofore, and to take from a deed a condition heretofore always recognized. We cannot think that the legislature intended to do these things, and we do not think the language used requires any such construction. There are many hundreds of unrecorded deeds in Georgia today, upon which the purchase-money of lands has been paid, and the grantors therein have subsequently become insolvent; and we believe it would be violative of every sense of right and justice, as well as of the law, to hold that the creditors of these grantors can subsequently obtain judgments and levy upon the property previously conveyed, and subject these homes to the satisfaction of their judgments so obtained. We therefore think that the judge below erred in the conclusion reachèd, "that a recorded judgment against the grantor became by operation of the act of 1889 a lien upon property previously conveyed in an unrecorded deed."

Secondly: The principles announced in the second and third head-notes need no enlargement. From the foregoing, while we are of the opinion that the judge below properly held the land not subject, we have thought it advisable, for the reasons given, to comment at length upon his written opinion touching the legal

aspect of the case; and while we think his reasoning was at fault, we agree with him in finding the property not subject, but we think it entirely immaterial in this case whether the claimants were in actual possession or not.                                    *Judgment affirmed.*