## SAUNDERS *v.* CITIZENS FIRST NATIONAL BANK OF ALBANY.

1. The provision of section 1 of the act of September 30, 1885 (Acts 1884-5, p. 124), which permitted all deeds to realty and all bills of sale to personalty, made to secure debt, to be recorded within thirty days from their date, was repealed by the act of October 1, 1889 (Acts 1889, p. 106), now embodied in the Civil Code (1910), § 3320.

2. The language, "all liens created or obtained," in section 3307 of the Civil Code, embraces both liens created by contract and arising by operation of law. Under that section a common-law judgment against a grantor, obtained after the execution of a security deed by him, and entry of the execution from such judgment on the general execution docket within ten days from its rendition, but before the actual record of the security deed, is superior to such deed.

3. The language, "a valuable consideration," in the Civil Code, § 6048, means a consideration "founded on money, or something convertible to money, or having a value in money, except marriage, which is a valuable consideration;" and such valuable consideration must flow to the plaintiff in execution. The principle embodied in section 6048 of the Civil Code is not applicable where the plaintiff in execution receives no benefit from a release, but a third person incidentally receives a benefit therefrom.

4. If A has a right to go upon two funds, and B upon one, both having the same debtor, and the funds are the property of the same person, A shall take payment from that fund to which he can resort exclusively, so that both may be paid. Where the holder of a security deed to land reduces the same to judgment, and thereby obtains a special lien upon

Executions, 23 C. J. p. 512, n. 26 New.

Marshaling Assets and Securities, 38 C. J. p. 1377, n. 89 New; p. 1378, n. 8. Mortgages, 41 C. J. p. 499, n. 65; p. 520, n. 33.

such land and a general lien upon all the property of the defendant, and under his judgment sells this land and thus brings a fund into court, the holder of a general senior judgment against the maker of the security deed, which is a lien both on the land embraced in the security deed and upon other incumbered property of the maker of said deed, will not be forced to pursue such other incumbered property of the maker of the security deed before resorting to the fund resulting from the sale of the land by the holder of the security deed under the judgment upon his debt thereby secured.

5. The holder of a judgment which is superior to one founded upon a debt secured by deed to land, and which is likewise superior to another judgment under which other property of the common debtor was levied upon and sold, which latter judgment was superior to that of the holder of the security deed, should have claimed the funds arising from the sale of the property of the common debtor under the judgment in favor of such third person, when requested so to do by the holder of the security deed; and upon his failure to do so his judgment, as between him and the holder of the security deed, should be credited with the amount of the net proceeds arising from the sale of the property of the common debtor under the judgment junior to his judgment and inferior to the security deed and the judgment obtained thereon.

No. 6020. NOVEMBER 18, 1927. REHEARING DENIED FEBRUARY 20, 1928.

The Court of Appeals (in Case No. 17845) requested instruction upon the following questions, a determination of which is necessary for a decision of the case:

A rule against the sheriff to distribute money was granted on the petition of the Citizens First National Bank of Albany. The record shows the following: P. W. Jones, on May 8, 1922, gave to the above-named bank a deed to secure a note for $20,119.25; this deed was recorded on May 24, 1922. The bank sued Jones at the March term, 1926, and obtained a general judgment against the realty described in the security deed. On May 9, 1922, the above-named bank secured a judgment against Edwin Sterne and P. W. Jones for $1580.87 principal, with interest and attorney's fees, and the execution was entered on the general execution docket on May 12, 1922, and on July 2, 1923, was transferred by the bank to R. B. Saunders; the said execution was lost, and an alias fi. fa. issued. Saunders, on January 14, 1924, signed a release of the lien of the said execution on a half interest in lands in Dougherty County, Georgia, which Jones exchanged to Mrs. Webb for certain property in Atlanta. The Dougherty County land so exchanged was conveyed by a security deed of Jones to J. W. Parker, trustee, to secure notes approximating $15,000. After a quitclaim deed to the lands above referred to had been made, reconveying the

same to Jones by the bank, the lands were levied on and sold; the money in the hands of the sheriff and the subject of this litigation is a part of the proceeds of said sale.   Said funds in the hands of the sheriff were held up under notice from Saunders, who claims a prior lien on the same by reason of the alias fi. fa. in his favor. It also appears that a fi. fa. was "issued from the city court of Albany in favor of the Bank of Leary against said P. W. Jones and Edwin Sterne, based on a judgment dated subsequent to said judgment of R. B. Saunders sought to be enforced in this case, said fi. fa. having been issued and entered on the execution docket subsequent to said fi. fa. of said Saunders," and levied on certain property of Jones, which was sold for $215.55 besides costs; and the attorneys of the Citizens First National Bank notified counsel for Saunders of the fact that the property would be sold, and called their attention to the fact that the execution of Saunders was a prior lien to the one of the Bank of Leary, and urged that they claim said fund, which they refused to do.   It also appears that after the levies referred to above were made, Jones had "no other property subject to execution except the Atlanta property for which was traded the property which was released by Saunders."

1.   Is that portion of the registration act approved September 30, 1885 (Ga. L. 1884-5, p. 124), which provides that "all deeds to realty and all bills of sale to personalty, where such deeds or bills of sale are given as security for debt, shall be recorded within thirty days from their date," still of force in so far as it relates to competition between contract liens and liens created by operation of law?

(a)   In respect to this competition, to what extent, if any, was the above-quoted portion of the act approved September 30, 1885, modified by the act of 1889 (Ga. L. 1889, p. 106), entitled "An act to provide when transfers and liens shall take effect as against third persons"?

2.   Under the laws of Georgia as now of force, is the lien by "a common-law judgment against the creditor, obtained after the execution of the security deed by him, and entered on the general execution docket within ten days from its rendition, but before the actual record of the security deed," superior to the lien of such deed where the deed is recorded within thirty days from its date?

3.   Where a deed to secure a debt is given on May 8, 1922, and

recorded May 24, 1922 (within thirty days), and where a general judgment is obtained against the same debtor on May 9, 1922, and recorded on May 12, 1922 (within ten days), and the property embraced in the security deed is levied on and sold, which of the two liens is superior in dignity and entitled to the funds raised from the sale of the land, the lien of the judgment based upon the debt secured by the deed, or the general execution?

4. What is meant by the words, "for a valuable consideration," as used in section 6048 of the Civil Code of 1910? Can this "valuable consideration" flow to any one except the plaintiff in execution? Is this law applicable where the plaintiff in execution receives no benefit from a release, but a third person incidentally does?

5. Under section 3220 of the Civil Code of 1910, at what time must creditors, as among themselves, "so prosecute their rights as not unnecessarily to prejudice the rights of others"? Has a judgment creditor who waits until another creditor, who has a lien by virtue of a security deed, brings funds into court, violated the principle involved in this section when he claims this fund, when he could have levied on other property of the common debtor either at the time of claiming the fund or prior thereto?

(a) Where a fund is already in the hands of the court, and one of the creditors has a general execution which he could levy on other property of the common debtor and probably raise money, would these two funds be equally accessible to the creditor who holds the general judgment? Would he be compelled to pursue the fund on which the other creditor has no lien?

(b) Would these funds be equally accessible to the holder of the general judgment when the property of the common debtor upon which he could levy and from which money could probably be obtained was encumbered?

6. Where two creditors of a common debtor are contesting for a fund in court, one claiming a lien thereon for several thousand dollars by reason of a deed to secure a debt, the deed having been reduced to judgment, and the other under a general judgment for about $1500, and other property of the common debtor has been levied on under an execution of still another party, and the attorneys for the owner of the security deed notify the owner of the general judgment that said property is to be sold, that his execu-

36

tion is a superior lien to the one under which it is advertised, and ask him to claim the fund, is it incumbent upon him to do so?

(a) If he refuses to comply with the foregoing request, is this a legal reason why all the fund in the hands of the sheriff should be awarded to the holder of the deed to secure a debt?

*Milner & Farkas,* for plaintiff in error.

*Bennet & Peacock,* contra.

HINES, J.    1.    The first sentence of section 1 of the act of September 30, 1885 (Acts 1884-5, p. 124), contains this language: "All deeds to realty and all bills of sale to personalty, where such deeds or bills of sale are given as security for debt, shall be recorded within thirty days from their date." Is this provision of said act still in force in cases where the competition is between contract liens and liens created by operation of law? We are of the opinion that this provision is not now of force. When the codifiers of the Code of 1895 codified this act, they left out the above language (§ 2772). The legislature, by the act of December 15, 1895 (Acts 1895, p. 98), adopted this Code with this act thus codified. Then the maker of the Code of 1910 adopted this codification of said act in totidem verbis (§ 3307). Thus the maker of the present Code again omitted from the codification of this act the above provision which required deeds to realty and bills of sale to personalty, made to secure debt, to be recorded within thirty days from the dates of such instruments. By an act of the legislature the present Code, containing the codification of said act, was adopted as the law of this State. Evidently the compilers of both of these Codes and the members of both of these legislatures were of the opinion that so much of the act of September 30, 1885, as required the record of these instruments within thirty days from the dates of their execution had been changed and repealed by the act of October 1, 1889 (Acts 1889, p. 106). Code of 1895, § 2778; Code of 1910, § 3320. So both the Codes of 1895 and 1910, with the act of 1885 so changed, were adopted by legislative acts, and were thus made the law of this State. Clearly the legislatures adopted, not parts of these Codes, but the entire Codes as compiled by the commissioners, and made them the law of this State. So under this general rule section 2772 of the Code of 1895, which codified the act of September 30, 1885, with the above omission, became the law of this State by the act of the legislature adopting

that Code, unless for some reason this general rule is not applicable. So under the same general rule section 3307 of the Code of 1910, which embraced the codification of this act, with this same omission, and in the same language in which it was codified in section 2772 of the Code of 1895, was adopted and made the law by the act adopting the Code of 1910.

Undoubtedly the legislature had the power to adopt these Codes as whole acts. *Central of Georgia Railway Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518). It is true that the omissions of statutes or parts of statutes do not of necessity render the omitted statutes or parts of statutes no longer binding. The mere omission of a statute from the Code does not deprive it of the force and effect of law, if such statute has not been changed, modified, or repealed by subsequent legislation either in or out of the Code. *Daniel* v. *Jackson,* 53 *Ga.* 87; *Kiser Co.* v. *Bonnett,* 157 *Ga.* 555, 560 (122 S. E. 338). No hard and fast rule can be adopted for determining whether or not an act or a part of an act omitted from the Code has been repealed by the adoption of the Code from which it has been omitted. Wherever it appears that a part of an act has been intentionally left out of the Code, and the omitted part so palpably changes the law as to negative the idea of mere clerical omission, and where the codification of such act, with such omission, appears to have been intentionally adopted by the legislature, then the omitted part of the statute is no longer of force. *City of Cochran* v. *Lanfair,* 139 *Ga.* 249 (77 S. E. 95). Was the above language from the act of 1885 intentionally omitted from the Codes of 1895 and 1910 by the compilers; and were the codifications of this act by the legislatures, with this omission, intentionally adopted by the legislatures? In the Codes of 1863, 1868, and 1873, the words, "within three months from its date," appeared after the word "recorded" in the section providing for the form and execution of mortgages. Code of 1863, § 1957; Code of 1868, § 1945; Code of 1873, § 1955. By the act of 1876 this time was cut down from three months to thirty days. Acts 1876, p. 34. This change appeared in the Code of 1882 as section 1955. But after the passage of the act of 1889 this time clause was eliminated in the Code of 1895, § 2724; and this elimination of this time clause appears in the Code of 1910, § 3257. Prior to the act of 1889, every deed was required to be recorded within one

year from its date, and if not so recorded lost its priority over a subsequent deed from the same vendor, recorded in time and taken without notice of the existence of the first. There had been no material change in the law upon this subject from the passage of the act of December 25, 1837 (Cobb's Digest, 175), until the passage of the act of 1889. Code of 1863, § 2667; Code of 1868, § 2663; Code of 1873, § 2705; Code of 1882, § 2705. By the act of 1889 the time limit in which deeds were required to be recorded was entirely swept away; and this change is reflected in the Code of 1895, §§ 2778, 3618, and in the Code of 1910, §§ 3320, 4198. So clearly the elimination by the codifiers of the time limit in which mortgages, deeds of bargain and sale, and deeds to realty and bills of sale to secure debts were required to be recorded was deliberate and intentional; and the adoption of these two Codes with this radical and striking change by the legislature was likewise advisedly and intentionally done. So for this reason we think the above language of the act of September 30, 1885, is no longer in force.

But this question is not now an open one in this State. In *Henderson* v. *Armstrong,* 128 *Ga.* 804, 807 (58 S. E. 624), this court, speaking through Chief Justice Fish, and in dealing with the question of the time in which deeds of bargain and sale should be recorded under the act of 1889, said: "The old law allowed one year in which to record a deed, during which time its priority over a subsequent recorded deed from the same vendor was preserved; whereas, under the law as it has been since the act of 1889, no time is prescribed within which a deed may be recorded so as to preserve its priority, and the question of precedence between two deeds from the same vendor depends, when the deed last executed was taken without notice of the first, upon priority of record," the due filing of a deed for record being equivalent to its record for the purpose of this priority. It necessarily follows, that, if the act of 1889 eliminated the times in which deeds of bargain and sale and mortgages were required to be recorded under previous laws, this act repealed the time clause in the act of 1885 by which deeds to realty and bills of sale to secure debts should be recorded. So we have the collective judgments of the codifiers of the Codes of 1895 and 1910, of the legislatures of 1895 and 1910, and of this court, that the language of the act of 1885

with which we are dealing is no longer of force. So we are of the opinion, being thus fortified by these judgments, that this language in that act is no longer of force; and this opinion is as firm as any mere human opinion can be.

2. To what extent, then, was the above-quoted portion of the act of September 30, 1885, modified by the registry act of October 1, 1889 (Acts 1889, p. 106; Civil Code (1910), § 3320)? This portion of the act of 1885 has been repealed, as we have undertaken to show. So the holders of deeds to realty and bills of sale to secure debt have not, since the adoption of the act of 1889, thirty days in which to have such instruments recorded. But does this repeal of this language necessarily postpone a deed to realty to secure debt, which was recorded within thirty days from its date, to the lien of a junior general judgment which was obtained against the grantor in such deed within thirty days from the date of its execution, and upon which judgment execution was issued and recorded upon the proper execution docket within ten days from the date of the rendition of the judgment, and prior to the record of such deed? By section 3306 provision is made for the execution of deeds and bills of sale to secure debts. Section 3307 provides for the record of such instruments, and then declares: "Such deeds or bills of sale not recorded remain valid against the persons executing them, but are postponed to all liens created or obtained, or purchases made, prior to the actual record of the deed or bill of sale. If, however, the younger lien is created by contract, and the party receiving it has notice of the prior unrecorded deed or bill of sale, or if the purchaser has the like notice, then the title conveyed by the older deed or bill of sale shall be held good against them." Failure to record such a deed or bill of sale postpones it "to all liens created or obtained, or purchases made, prior to the actual record of the deed or bill of sale." The language, "all liens," is very broad, and embraces both liens created by contract and liens arising from operation of law. It will be noted that the language of section 3307, defining the liens to which unrecorded security deeds and bills of sale are postponed, is the same as that used to define the liens to which unrecorded mortgages will be postponed. The language as to mortgages is as follows: "Mortgages not recorded within the time required remain valid as against the mortgagor, but are postponed to all other liens created or ob-

tained, or purchases made, prior to the actual record of the mortgage. If, however, the younger lien is created by contract, and the party receiving it has notice of the prior unrecorded mortgage, or the purchaser has the like notice, the lien of the older mortgage shall be held good against them." § 3260. So it will be noticed that the liens, to which an unrecorded security deed or bill of sale will be postponed under section 3307, are "all liens created or obtained . . prior to the actual record of the deed or bill of sale." It will likewise appear that the liens to which unrecorded mortgages will be postponed are "other liens created or obtained . . prior to the actual record of the mortgage." In construing the language, "liens created or obtained," when applied to mortgages under section 3260 of the Code of 1910, and previous Codes, this court has uniformly and consistently held that this language includes both liens arising by contract and liens arising from operation of law. *Andrews* v. *Mathews,* 59 *Ga.* 466; *Richards* v. *Myers,* 63 *Ga.* 762; *New England Mortgage Security Co.* v. *Ober Co.,* 84 *Ga.* 294 (10 S. E. 625); *Cottrell* v. *Merchants & Mechanics Bank,* 89 *Ga.* 508 (15 S. E. 944); *Cambridge Tile Co.* v. *Scaife Co.,* 137 *Ga.* 281 73 S. E. 492). Actual notice to the judgment creditor, at the time he obtains judgment, of the existence of the unrecorded lien is immaterial. *Burke* v. *Anderson,* 40 *Ga.* 535, 540; *Cottrell* v. *Merchants & Mechanics Bank,* and *Cambridge Tile Co.,* v. *Scaife Co.,* supra.

By analogy and sound logic, the meaning given to the language, "liens created or obtained," when used in section 3260 as to mortgages, should be given to the same language in section 3307 when used as to deeds and bills of sale to secure debt. This is especially true when we consider that "The objects of a mortgage and security deed and a bill of sale to personalty under the provisions of the Code are identical—security for a debt;" and when we remember that "this court has treated deeds to secure debts and bills of sale to secure debts as equitable mortgages." *Merchants &c. Bank* v. *Beard,* 162 *Ga.* 446, 449 (134 S. E. 107). So we find that this court has given to this language the same meaning in dealing with the competition between unrecorded mortgages and liens, and unrecorded security deeds and liens. This court has held over and over again that "Under section 3307 of the Civil Code of 1910 a common-law judgment against a grantor, obtained after the execu-

tion of a security deed by him, and entered on the general execution docket within ten days from its rendition, but before the actual record of the security deed, is superior to such deed." *Cabot* v. *Armstrong,* 100 *Ga.* 438 (28 S. E. 123) ; *Cambridge Tile Co.* v. *Scaife Co.,* supra; *Coley* v. *Altamaha Fertilizer Co.,* 147 *Ga.* 150 (93 S. E. 90) ; *Cooke* v. *Adams Co.,* 148 *Ga.* 289 (96 S. E. 499) ; *Merchants &c. Bank* v. *Beard,* supra.   In the two cases last cited, this court construed §§ 3307, 3320; and held that under section 3307 there was competition between unrecorded security deeds and bills of sale and judgment liens, and that judgment liens prevailed over such unrecorded deeds and bills of sale.   Confusion arises from treating the competition which exists between unrecorded deeds to realty and bills of sale to secure debt and liens under section 3307, and the competition which exists between unrecorded deeds, mortgages, and liens and "a transfer or lien" under section 3320, as one and the same thing; or from the erroneous conception that section 3307 has been supplanted by section 3320. These two competitions are not the same; and the one under section 3307 has not been·done away with by that created under section 3320.   As we have seen, this court has construed the language, "liens created or obtained," in section 3307, to embrace both liens created by contract, or arising from operation of law.   Then again, this court has construed the language, "a transfer or lien," in section 3320, as meaning only liens which are created by contract.   *Donovan* v. *Simmons,* 96 *Ga.* 340 (22 S. E. 966), *Griffith* v. *Posey,* 98 *Ga.* 475 (25 S. E. 515) ; *Lytle* v. *Black,* 107 *Ga.* 386 (33 S. E. 414).   Of course, if the time clause in the act of September 30, 1885, had not .been repealed, the security deed which was recorded within thirty days would prevail over the junior judgment upon which execution issued and was recorded within ten days from the rendition of the judgment.

Applying the above rulings, our answer to question 1 (a) is that the competition created by the act of September 30, 1885, has not been modified by the act of 1889, except as to the time clause in the former act, which has been repealed by the act of 1889.   To questions two and three our answer is that the lien of the judgment. is superior to the security deed.

3.   The fourth division of the questions propounded by the Court of Appeals invokes the construction of section 6048 of the

Civil Code. This section is as follows: "If the plaintiff in execution, for a valuable consideration, releases property which is subject thereto, it is a satisfaction of such execution to the extent of the value of the property so released, so far as purchasers and creditors are concerned." There are embraced in the above division three questions, to wit: 1. "What is meant by the words 'for a valuable consideration,' as used in section 6048 of the Civil Code of 1910?" 2. "Can this 'valuable consideration' flow to any one except the plaintiff in execution?" 3. "Is this law applicable where the plaintiff in execution receives no benefit from a release, but a third person incidentally does?"

"A valuable consideration is founded on money, or something convertible to money, or having a value in money, except marriage, which is a valuable consideration." Civil Code (1910), § 4243. This is the meaning of the language, "a valuable consideration," found in section 6048 of the Civil Code. *Foster* v. *Rutherford,* 20 *Ga.* 676; *Molyneaux* v. *Collier,* 30 *Ga.* 731, 741. But it is insisted by counsel for the bank that this is not the correct interpretation of the language, "for a valuable consideration," as contained in the code section. Their contention is that any benefit to the releasor or any injury to the releasee is a valuable consideration under said section. This contention is not well founded. It grows out of confusing a valid or sufficient consideration which will generally sustain a contract of release between the releasor and the releasee, and a valuable consideration for such release which will have the effect of satisfying the execution, to the extent of the value of the property so released, as to purchasers from or creditors of the plaintiff in execution. "A consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise." Civil Code (1910), § 4242. Generally any benefit to the promisor or any injury to the promisee will be a sufficient consideration to sustain a contract. Generally a slight consideration is sufficient to sustain a contract, and courts of law will not look closely into its adequacy. *Austell* v. *Rice,* 5 *Ga.* 472. In *Tompkins* v. *Philips,* 12 *Ga.* 52, this court held that "Any benefit accruing to him who makes the promise, or any loss, trouble, or disadvantage undergone by, or charge imposed upon, him to whom it is made, is sufficient consideration, in the eye of the law, to sustain an assumpsit." In that case Philips

held senior executions against Foster. Tompkins obtained a junior judgment against Foster. Tompkins informed Philips of the existence of certain slaves which he believed were subject to Philips' executions and could be condemned as the property of Foster, and urged Philips to have the same levied on. Philips replied that he knew the slaves and knew that they were not subject, and that he could not incur cost and would not levy upon them; that if Tompkins was fool enough to risk his money in the attempt he was welcome to do so, and could have all he could get. Tompkins then proposed that if Philips would have the slaves levied on, he (Tompkins) would pay all the costs, which Philips refused to do; and Philips executed a writing in which he relinquished and released the liens of his fi. fas. in favor of Tompkins upon these slaves. Thereupon Tompkins had his execution levied upon them, and they were found subject to his fi. fa., and brought to sale. Philips claimed, under his fi. fas., the money arising from their sale. Under these facts this court held that there was a sufficient consideration to sustain the above agreement between Philips and Tompkins; but the court was not dealing with the question whether such agreement would have the effect of satisfying Philips' executions to the extent of the value of these slaves.

Properly construed, there is nothing to the contrary of what we hold in *Williams* v. *Brown,* 57 *Ga.* 304. In that case this court was not dealing with the question whether a valid or sufficient consideration was a valuable consideration within the meaning of the code section with which we are dealing. The first headnote in that decision is as follows: "If a plaintiff in execution, for a valuable consideration, releases property which is subject thereto, it is a satisfaction of such execution to the extent of the value of the property so released, so far as purchasers and creditors are concerned." That headnote laid down the correct principle applicable in that case, and we announce it as the true rule in this case. In other words, this court held that the consideration to uphold a release, under section 6048 of the present Code, must be a valuable consideration. It is true that this court in the opinion in that case set out the entire charge of the trial court. That charge embraced the following instruction: "You are to ascertain what property was released, if any, and its value; and if the release was made, whether for a valuable consideration, for this is

required. A consideration is valid if any benefit accrues to one party to the contract, or injury to the other. If there was such a release, then the execution would be satisfied, its lien extinguished as to creditors, and it could not claim the money in the hands of the sheriff. If there was no release or agreement, or no valuable consideration to Williams, Birnie & Company, then you should find for them." In the decision this court further said: "The question which was made on the trial of the issue in the case now before us was, whether the plaintiffs, Williams, Birnie & Company, the assignees of the Neal fi. fa., had released any of the defendant's property for a valuable consideration, or had allowed funds arising from the sale of the defendant's property, with their consent, to be applied to younger fi. fas. against him, and to what extent? These questions were fairly submitted to the jury, under the charge of the court, and there is sufficient evidence in the record to support the verdict." In the instruction just quoted the trial judge defined what constituted a valid consideration, but in the same instruction told the jury that the release must be based upon a valuable consideration, and that the jury must ascertain what property was released, if any, and its value, and, if they found that the release was made, whether it was for a valuable consideration, for this was required. Then followed the language defining a valid consideration. But the trial judge in that case nowhere instructed the jury that a valid consideration would be sufficient to sustain a release under the code section with which we are dealing.

It is true that this court, in its opinion, stated that the question was whether the assignees of the plaintiff in fi. fa. had released any of the defendant's property for a valuable consideration, or had consented that funds arising from the sale of the defendant's property be applied to younger fi. fas. against him. From this statement counsel for the bank draws the conclusion that this court in that case ruled that a valid consideration was sufficient to sustain a release under section 6048. This deduction, under the facts of that case, is not well drawn. In fact, it was not error in that case to define to the jury what constituted a valid consideration, so that they might not be confused. Furthermore, the question raised in the instant case as to what constitutes a valuable consideration was not made or considered in the case cited. No

exception was taken to that portion of the above instruction which defines a valid consideration. All that this court held was that the issue whether the release in that case was for a valuable consideration was fairly submitted to the jury. The trial judge had instructed the jury that if the release was not for a valuable consideration, it would not be good under the code section with which we are dealing. We do not mean to hold that such release would not be good between the releasor and the releasee. What we do mean is, that any consideration for a release other than a valuable consideration does not bring the case within the purview of section 6048. This section declares in so many words that a release under this section must rest upon a valuable consideration. We are giving to the language, "a valuable consideration," not only the ordinary signification of these words, but their meaning as expressly defined by the Code. So we answer the questions propounded in the fourth division of questions propounded by the Court of Appeals, as follows: (1) A valuable consideration, under section 6048 of the Civil Code, is one founded on money, or something convertible to money, or having a value in money. (2) This valuable consideration must be paid or flow to the plaintiff in fi. fa. (3) The principle embodied in this section is not applicable where the plaintiff in execution receives no benefit from the release, and the fact that a third person incidentally does receive such benefit is not a sufficient consideration to sustain a release under this section.

4. The question numbered five embraces various subquestions. From lack of consistency, clearness, and completeness, we find it impossible to answer these various questions satisfactorily. For instance, the second question propounded does not state whether the funds brought into court by the creditor holding a security deed were brought in by virtue of a judgment obtained on the debt secured by such deed, or whether they were brought into court by such creditor under other process. We assume, however, that the secured creditor reduced his debt to judgment, and under said judgment had the property embraced in his security deed sold, and thus from this source brought into court the funds involved in this case. In the first question in 5 (a), these facts are stated: There is a fund in court. One of two creditors has a general execution which he could levy on other property of the common

debtor, and probably raise money.    Question : Would the fund in court and such other property be equally accessible to the creditor who holds the general judgment ?    Whether the other creditor has a general judgment lien, or only a special judgment lien, or whether he has any judgment lien at all, is not stated; and it is not stated whether the other property is of sufficient value to discharge the general judgment of the creditor first referred to in said question.    The second question under 5 (a) assumes that "the other creditor has no lien."    Does "lien," as used in this question, refer only to the lien under the security deed, or are we to infer that the holder of the security deed has no judgment generally binding the property of the common debtor ?    Question 5 (b) states that "the other property" referred to in the first question in 5 (a) was incumbered.    It is not stated whether the incumbrance upon such property was one junior or prior to the general judgment of the creditor referred to in the first question under 5 (a).    The rank of such incumbrance as against any judgment lien held by the holder of the security deed is not stated.    Besides, question 6 states that the holder of the security had reduced his debt to judgment, thus acquiring a judgment lien.

In answering these questions we assume the major question to be this :    B is the holder of a security deed to land, which he reduces to judgment, which is both a special lien upon such land and a general lien upon all the property of the defendant, and under his judgment sells this land, and thus brings a fund into court.    A holds a senior general judgment against the maker of the security deed, which is a lien on the land embraced in the security deed and upon other incumbered property of the maker of such deed. In these circumstances can A be forced to pursue such other incumbered property of the maker of the security deed, before resorting to the fund resulting from the sale of the property by the holder of the security deed under the judgment upon his debt thereby secured ?    If A has a right to go upon two funds, and B upon one, both having the same debtor, and the funds are property of the same person, A shall take payment from that fund to which he can resort exclusively, so that both may be paid.    Ex parte Kendal, 17 Vesey, 520; *Newsom* v. *McLendon,* 6 *Ga.* 392, 400; Civil Code (1910), § 3220.    Under the facts and the principle just stated, a judgment creditor who waits until another creditor, who has a

lien by virtue of a security deed, brings funds into court upon a judgment obtained on the debt secured by such deed and from the sale of the property therein embraced, does not violate the principle embraced in § 3220 by claiming such funds, although he could have levied on other incumbered property of the common debtor either at the time of claiming the fund or prior thereto. Under the above principle, the judgment creditor having a lien on all of the property of the common debtor, including land embraced in the security deed, and whose judgment lien is superior to such instrument, will not be required to refrain from claiming the funds arising from the sale of the land embraced in such security deed, when the same is sold under judgment obtained by the holder thereof upon the debt thereby secured, and will not be forced to give up his judgment lien on such funds, and be required to levy upon other incumbered property of the common debtor, when the holder of the security deed has reduced his debt to judgment, and can levy the execution issuing thereon upon such incumbered property. The above doctrine does not apply when both creditors have judgments against the common debtor. Certainly a judgment creditor, having a legal right to levy upon all the property of the common debtor, will not be required, under the above doctrine, which is an equitable one, to permit funds arising from the sale of the property embraced in the security deed to go to the holder thereof, when the judgment of the former is superior to the lien of the latter, and be required to resort to a levy upon other incumbered property of the common debtor, when it is questionable whether such resort would be fruitful in producing funds to pay off the superior judgment. Such incumbered property of the common debtor would not be equally accessible to the creditor who holds the general judgment referred to in question 5 (a), especially when it is not shown that this judgment is superior to the incumbrance upon such property, or that the judgment of the holder of the security deed is inferior to such incumbrance.

5. We assume that the judgment of the third party referred to in question 6 was superior to the judgment obtained by the holder of the security deed upon the debt thereby secured. Upon this assumption, and under the principle above announced, the holder of the judgment, which was superior both to that under which the property of the common debtor was levied on and sold, and to the

lien of the security deed, should have claimed the funds arising from the sale of the property of the common debtor under the junior judgment, when requested so to do by the holder of the security deed and upon the judgment rendered upon the debt thereby secured. In these circumstances the failure of the senior judgment creditor to claim the funds arising from the sale of the property of the common debtor under the junior judgment will subject the senior judgment to a credit of the amount of the net proceeds arising from the sale of the property of the common debtor under the junior judgment. Such failure, however, would not require all the funds involved in this litigation to be awarded to the holder of the deed to secure debt, if such funds exceed the amount realized from the sale of other property of the common debtor under such junior judgment.

6. We answer the first question propounded by the Court of Appeals in the negative. The answer to question 1 (a) is set out in the second division. The answers to questions 2 and 3 sufficiently appear from that division. The answer to question 4 sufficiently appears from the third division. In view of the rulings in the fourth division, we answer the first question in question 5, as follows: This time begins when the creditors undertake to prosecute their rights by legal process. We answer the second question in question 5 in the negative. We answer the questions in 5 (a) in the negative, assuming in answering the second that the language, "the other creditor has no lien," means such creditor has no contractual lien on such other property, but has a judgment lien thereon by reason of having reduced his secured debt to judgment. We answer 5 (b) in the negative. In view of the rulings made in the fifth division, we answer question 6 in the affirmative, and 6 (a) in the negative.

*The other Justices concur, except*

RUSSELL, C. J., dissenting. I feel constrained to dissent from the ruling in the fifth headnote. I do not think that the refusal of a creditor holding the superior judgment lien to claim a fund from a third person holding a lien superior to that of another judgment creditor can be construed to be included within the terms of section 3220 of the Code merely because he declined this request. "As among themselves, creditors must so prosecute their own rights as not unnecessarily to jeopard the rights of others,"

is the language used in the section.   A quiescent plaintiff in fi. fa. can not be compelled to pursue any particular course of action, unless he is prosecuting his rights by attempting to enforce the fi. fa.

### ON MOTION FOR REHEARING.

HINES, J.   A motion for rehearing is made upon the ground that we overlooked the decision in *Williams* v. *Brown,* 57 *Ga.* 304, and certain statutes.   We have redrafted the third portion of our opinion dealing with the questions raised in the motion for rehearing.   This redraft in no way changes our original opinion; and accordingly the motion for a rehearing is denied.