WALKER COUNTY FERTILIZER CO. *v.* NAPIER *et al.*

No. 11917. NOVEMBER 12, 1937.

*David F. Pope,* for plaintiff. *Rosser & Shaw,* for defendants.

GRICE, Justice. Walker County Fertilizer Company levied a common-law fi. fa. against George M. Napier on an eighth undivided interest in land in Walker County. Miss Alice Napier and Miss Carolyn Napier filed a claim. The following admission was made: "We are admitting that Mrs. N. C. Napier, mother of George M. Napier, was seized and possessed and had title to the property levied on in this case, under the terms of the last will and testament of N. C. Napier, and that she died intestate prior to the year 1916, and that George M. Napier was an heir and inherited one eighth interest in the whole property, with title to the property involved in this case."

In evidence was a security deed dated June 23, 1916, from the defendant in fi. fa. to Miss Alice Napier, conveying a sixteenth undivided interest in the land levied on, recorded on August 1, 1936. There was testimony that a similar deed of same date had been delivered to Miss Carolyn Napier, the other claimant, and that the deed was destroyed by fire in the year 1925. The bill of exceptions recites: "During the progress of the trial certain notes payable to Miss Carolyn Napier, also certain checks and notes and tax fi. fas. that had been identified by Miss Alice Napier, were tendered in evidence; and the plaintiffs then and there objected to their introduction in evidence, and then and there made the following objections thereto: 'I object to each and all of them . . on the ground, as indicated by the evidence, that they are the basis of, or are supposed to be the basis of, certain security deeds, neither of these security deeds having been re-

corded; and we contend, as a matter of law, they can not arrest the progress of this execution, and could not, in a distribution of funds arising from the sale of the property, participate therein.' Counsel for claimants then tendered deed from George M. Napier to Miss Alice Napier, dated June 23, 1916, witnessed by Mrs. M. E. Harwell and J. N. Johnson Jr., N. P., Fulton County, Ga., which said deed recited a consideration of $2500.00, and conveyed an undivided one-sixteenth interest in certain property in Walker County, Ga., including all of the property levied on, and contained the following clause: 'This conveyance is to be construed as a deed passing title, and not as a mortgage, and is made and intended to secure the payment, principal and interest, and all costs of collection, including ten per centum attorney's fees, of certain promissory notes aggregating the sum of approximately $2500.00, heretofore loaned to said first party by said second party.' This deed was recorded in the office of the clerk of the superior court of Walker County, Ga., in deed book 68, page 412, on Aug. 1, 1936. Whereupon counsel for plaintiffs said to the court: 'Now, I want to renew my objection to the introduction of the notes, tax fi. fa. and execution, and make the following objection to the deed: that the deed being made in 1916, and held off from the record until Aug. 1, 1936, and I object to the deeds specifically on the ground that it being a security deed to secure a debt, and it did not go to record until long after this judgment was rendered and entered upon the general execution docket of this county, where the property lies, that it can not arrest or interfere with the progress of this execution, and could not in any way, upon the sale of the property, participate in the distribution of funds arising from a sale thereof.' Which objections the court then and there overruled, and allowed the eveidence to go in, to be introduced in evidence; that is, the notes, tax fi. fas., and deed were allowed to go in evidence. To this ruling of the court in permitting the introduction of said documentary evidence over the objection at the time made and urged, as just above set forth, plaintiff in error excepted, now excepts, and assigns specifically that same was error, upon the grounds that it was contrary to law, wrong both on the law and facts of the case, and without law or facts to uphold or support it."

At the conclusion of the evidence the court directed a verdict

for the claimants. The plaintiff excepted in the following language: "To this ruling and judgment directing a verdict for the claimants, plaintiff in error excepted, now excepts, and assigns the same as error, specifically upon the grounds that it was contrary to law, contrary to the facts, wrong both on the law and facts of the case, and without law or facts to uphold or support it. Plaintiff in error further assigns error by saying and alleging that the court committed error in directing a verdict for the claimants; for that under the pleadings and the evidence submitted to the jury, that the pleadings and evidence did not justify or warrant the direction of said verdict, and plaintiff in error excepted to said ruling of the court, and now excepts and assigns the same as error, being without law or facts to uphold it or support it, and being wrong both on the law and facts of the case; and they say that said directed verdict and final judgment entered thereon was not and could not be a legal termination of the same." The defendants moved to dismiss the writ of error, on the ground that it is predicated on the verdict of a jury, and no motion for new trial was filed, and that there is no valid assignment of error on the ruling directing a verdict.

· ■ In *Patterson* v. *Beck*, 133 *Ga.* 701 (66 S. E. 911), the court had a motion to dismiss on the ground that there was no sufficient assignment of error. A number of previous holdings were formally reviewed. The opinion of the court was written by Mr. Justice Joseph Henry Lumpkin. In approaching a decision of the particular question presented in the *Patterson* case, he called attention to three sections of the Code. The first of these (now § 6-901) declares that the bill of exceptions shall specify plainly the decision complained of, and the alleged error. The second (§ 6-1607) declares that this court shall not decide any question unless it is made by a special assignment of error in the bill of exceptions. The third is § 6-1307, as follows: "The Supreme Court, or Court of Appeals, shall not dismiss any case for any want of technical conformity to the statutes or rules regulating the practice in carrying cases to said courts, where there is enough in the bill of exceptions or transcript of the record presented, or both together, to enable the court to ascertain substantially the real questions in the case which the parties seek to have decided therein." Each of the first two sections had long been of force.

The third originated in the act of 1896. Said Justice Lumpkin: "Construing these sections together, they furnish a rule for bringing before this court questions for decision. The last-mentioned act was evidently intended to liberalize somewhat the former ones, or at least the construction which had sometimes been given to them. Rules of this character are made for a substantial purpose, not as mere technical pitfalls to catch the unwary." Elsewhere in the decision he said that the rule requiring that error be properly assigned "is a rule of substance, not of words—a requirement based on sound reason, not a mere filigree of technical formula." If we are to give effect to the legislative mandate that no case shall be dismissed for any want of technical conformity to the statute or rules of practice where there is enough in the bill of exceptions or transcript of the record, or both, to enable us to ascertain substantially the real question in the case which the parties seek to have decided, then the motion to dismiss the writ of error must be denied. In *Kelly* v. *Strouse,* 116 *Ga.* 872 (10) (43 S. E. 280), it was ruled that an assignment of error in the words, "the court committed error in directing a verdict for the plaintiff, under the pleadings in the case and the evidence submitted to the jury," was a "special assignment of error" presenting for decision the question whether the facts alleged in the petition and shown by the evidence were sufficient in law to authorize a recovery by the plaintiff. In *Howell* v. *Pennington,* 118 *Ga.* 494 (45 S. E. 272), it was held: "A general complaint in a bill of exceptions that a trial judge erred in directing a verdict for the plaintiff is to be understood as meaning the judge committed error in holding that the evidence, viewed in the light of the pleadings, demanded a finding against the defendant; and such complaint, thus interpreted, constitutes a sufficiently specific assignment of error, if the transcript of the record discloses upon what issues the case was tried." It is to be noted that in neither of these cases did the assignment of error state in so many words that the verdict directed was erroneous because there were questions of fact that should have been submitted to the jury. Nor was that true in either of the following cases where an assignment of error on the direction of a verdict was held sufficient: *Anderson* v. *Walker,* 114 *Ga.* 505 (40 S. E. 705) ; *Phillips* v. *Southern Ry. Co.,* 112 *Ga.* 197 (37 S. E. 418) ; *Scarborough* v. *Holder,* 127 *Ga.* 256

(56 S. E. 293). It is submitted that no one who reads the bill of exceptions in the instant case and the transcript of the record accompanying it will doubt that the assignment of error is such as "to enable the court to ascertain substantially the real questions in the case;" and that is all that is required under the act of 1896 (Code, § 6-1307). The motion to dismiss is overruled.

■ The Misses Napier filed a joint claim to the eighth undivided interest levied on. To support their claim was a security deed from the defendant in fi. fa. to one of the claimants, executed June 23, 1916, conveying a sixteenth undivided interest, which was not recorded until August 1, 1936; and proof that at about the same time there was delivered a security deed for a like undivided interest from the defendant in fi. fa. to the other claimant. This latter deed was destroyed by fire in 1925, and was never recorded. The entry of levy was dated June 23, 1936. The case was tried on February 15, 1937. The judgment on which the fi. fa. was based was rendered by the city court of Decatur, on November 18, 1929. The fi. fa. was dated November 21, 1929. On the next day it was entered on the general execution docket of the county wherein it was obtained. On December 18, 1929, it was placed on the general execution docket of Walker County. The question arises, whether the security deeds are postponed to the lien of the judgment creditor, in view of the fact that one of the deeds was never recorded, and the other not until long after the creditor had obtained his judgment and had the fi. fa. issued thereon placed on the general execution docket.

Before the passage of the act approved August 27, 1931 (Ga. L. 1931, pp. 153, 154), the lien of the judgment creditor was superior to any rights acquired by the holder of an unrecorded security deed. "Every such [security] deed shall be recorded in the county where the land conveyed lies. . . Such deeds or bills of sale not recorded remain valid against the person executing them, but are postponed to all liens created or obtained, or purchases made, prior to the actual record of the deed or bill of sale." Park's Code, § 3307. Under that section a common-law judgment against a grantor, obtained after the execution of a security deed by him, and entry of the execution from such judgment on the general execution docket within ten days from its ren-

dition, but before the actual record of the security deed, is superior to such deed. *Saunders* v. *Citizens National Bank of Albany,* 165 *Ga.* 558 (142 S. E. 127). In the *Saunders* case Mr. Justice Hines called attention to the similarity in section 3307, dealing with security deeds, and section 3260, dealing with mortgages, and to the fact that it had several times been held that actual notice to the judgment creditor, at the time he obtains judgment, of the existence of the unrecorded lien of the mortgage, is immaterial. We think the same thing would follow in a contest between a judgment creditor and the grantee in a security deed, under the law as it existed before the act approved August 27, 1931. It follows that unless the claimants are entitled to take refuge under that act, the land is subject to the execution, notwithstanding the security deeds were prior in date. So much of the act above referred to as is pertinent declares "that the effect of failure to record a mortgage or deed to secure debt or bill of sale shall be the same as is the effect of failure to record a deed of bargain and sale." The act is codified in the Code of 1933, §§ 67-106, 67-109, 67-1303, 67-1305; the particular provision above noted being found in § 67-1305. An absolute deed, or deed of bargain and sale, though unrecorded, is superior to a younger recorded judgment against the vendor. *Donovan* v. *Simmons,* 96 *Ga.* 340 (22 S. E. 966); *Lytle* v. *Black,* 107 *Ga.* 386 (33 S. E. 414); *Saunders* v. *Citizens First National Bank,* supra.

Does the act of 1931 operate retrospectively? By the provision of paragraph 2 of section 3 of article 1 of the constitution of Georgia the passage of any retroactive law is forbidden; and the Code declares that "Laws prescribe only for the future; they can not impair the obligation of contracts, nor usually have a retrospective operation." § 102-104. Bouvier's Law Dictionary defines the word "retrospective" to mean "looking backward; having reference to a state of things existing before the act in question." In *Tucker* v. *Harris,* 13 *Ga.* 1 (58 Am. D. 488), Judge Lumpkin said, by way of obiter, that registry acts having a retrospective operation have never been considered as falling within the constitutional inhibition against ex post facto laws and laws impairing the obligation of contract. The contest there was between two deeds, one dated June 10, 1829, but not recorded until February 15, 1840, and one dated August 7, 1838, and recorded

October 18, 1838. The act of 1837 provided that in all cases where two or more deeds shall hereafter be executed by the same person, the one recorded within twelve months of its execution, if the junior grantee have no notice of the prior unrecorded deed, shall have the preference. The court said that the act was merely declaratory of what the law already was and had been since 1755, but added: "But had the rule been established for the first time by the act of 1857, giving preference to the deed first recorded, the courts would construe it to extend to conveyances made pre- vious to its passage; as registry acts having a retrospective opera- tion have never been considered as falling within the constitu- tional inhibition against ex post facto laws and laws impairing the obligation of contract." It also may be observed that Judge Lump- kin was not considering whether the General Assembly intended that the act should have a retrospective application. His remark was in effect that such registry acts which do have a retroactive operation are not ex posto facto laws or laws impairing obligation of contract. Moreover, *Tucker* v. *Harris,* supra, was decided in 1853, some years before the date of our first Code wherein was contained for the first time the language of our present Code, § 102-104, to which we have referred. *Wilder* v. *Lumpkin,* 4 *Ga.* 208, dealt with the act of December 29, 1847. That act de- clared that from and after its passage it should not be necessary to make securities on appeal and injunction bonds parties to writs of error. It was held not to apply to cases occurring before its passage and pending at the time. Judge Nisbet said: "Retro- spective laws, which divest previously acquired rights, although such as are not within the prohibitions of the constitution, are upon the same position, as to principle, with ex post facto laws; and if enacted by the legislature, will not be enforced by the courts. . . The legislature did not, as we think, intend this act to have any retroactive effect. It is in the following words: 'Be it enacted,' etc., *'that from and after the passage of this act,'* etc. . . If it had been the intention of the legislature to cause this act to retrospect or to embrace cases pending, we have a right to presume that they would have so declared." The act involved in the instant case has in it the same words italicized by Judge Nisbet—"That from and after the passage of this act," etc.

In *Lockhart* v. *Tinley,* 15 *Ga.* 496, the court had before it the

act of January 22, 1852, which declared, that, "from and after the passage of this act, no judgment rendered in any of the courts of this State shall be enforced by the sale of any property, real or personal, which the defendant has sold and conveyed to a purchaser for a valuable consideration, and without actual notice of such judgment; provided such purchaser, or those claiming under him by such sale and conveyance, have been in peaceable possession of such real estate for four years, and of such personal property for two years before the levy shall have been made thereon." In that case the facts were: A fi. fa. in favor of Lockhart & Threewits *v.* James Norris was levied on a lot of land. Tinley interposed a claim. The land belonged to Norris, the defendant in fi. fa., after the judgment. Tinley was a bona fide purchaser from him, without notice, and had possession more than four but less than seven years before the levy. Under the act of January 22, 1852, he was protected; under the law before that act, he was not. The sole question was, whether the act had a retrospective operation, so as to affect cases where the four years had expired. The court below held that it did, and so charged the jury. This court ruled that this act, by its phraseology and plain terms, was not intended to have retrospective application to judgments rendered before its passage. Judge Starnes, speaking for the court, said: "In our opinion, the present question is determined by the phraseology of the act itself—its plain terms. Let us paraphrase the language somewhat, and read it thus: 'No judgment, rendered in any of the courts of this State, from and after the passage of this act, shall be enforced,' etc., and the meaning becomes strikingly obvious. Whether or not the legislature had the power to give the act a retrospective operation, these terms show that they have not done so; and therefore the act does not apply to the case at bar." He differentiated the case of *Griffin* v. *McKenzie, 7 Ga.* 163 (50 Am. D. 389), by showing that the third section of the act of 1822, dealt with in the *Griffin* case, in direct terms applied to judgments that "have been or may be rendered," etc. In *Boston* v. *Cummins, 16 Ga.* 102 (60 Am. D. 714), this court considered an act of 1847, requiring marriage settlements already made to be recorded within twelve months after its passage, and those executed afterwards within three months from their date; and further providing that if not recorded within the time pre-

scribed by the act, they should have no force as against a bona fide purchaser, or bona fide creditor, who might purchase or give credit before the actual recording of the same. The question was whether the act was unconstitutional if applicable to marriage settlements executed before its passage. The court held that it was. The act expressly included within its terms "all marriage agreements or settlements heretofore executed;" so whether or not the General Assembly intended the act to operate on settlements already executed could hardly be said to have been a question in the case. The sole question was whether the legislature had the power to apply it to existing agreements. In the opinion Judge Lumpkin said: "If the act in question, then, impairs the force of contracts, or confiscates private property, or disturbs any vested rights, we ought not to give it effect. But is this its character?" The court held that it did not, and therefore was not retroactive in the sense that it was invalid.

In *Bond* v. *Munro,* 28 *Ga.* 597, the court had before it the act of 1858, "to make uniform the decisions of the Supreme Court of this State, to regulate the reversals of the same, and for other purposes," which was passed while a case was pending. The court declined to consider whether or not the act was constitutional; for, said Judge Benning, delivering the opinion, "We think it true that the act is only prospective in its operation, and therefore that it does not apply to this case. . . It is a general rule in the interpretation of statutes that they are to be so interpreted that they shall not affect any case that was in existence before their passage, unless they expressly, or by necessary implication, mention that case." The settled rule for the construction of statutes is not to give them a retrospective operation, unless their language imperatively requires it. *Bussey* v. *Bishop,* 169 *Ga.* 251, 253 (150 S. E. 78, 67 A. L. R. 287) ; *Moore* v. *Gill,* 43 *Ga.* 388. On August 27, 1925, the legislature amended section 25 of the compensation act of 1920 by adding thereto an exception "that if a claimant proceeds in good faith against a corporation the charter of which has expired, but which was still doing business, he shall have the right to then proceed against the person or persons operating under the corporate name, and the one-year limit shall not apply." This court, calling attention to the fact that it was not expressly or by necessary implication made applicable to causes

of action already barred when it was passed, for that reason held it not to apply to such cause of action. Here again this court, in the *Bussey* case, supra, applied the principle that the general rule for the construction of statutes is not to give them retrospective operation unless their language imperatively requires such construction. In *Mills* v. *Geer*, 111 *Ga.* 275 (36 S. E. 673, 52 L. R. A. 934), the question dealt with was whether the act of 1897, relating to pleading as a set-off the value of permanent improvements under certain circumstances, was, as applied to improvements made before its passage, such retroactive legislation as injuriously affected vested rights. A majority of the court held that it was not, as thus applied, invalid. It was conceded that the act there under consideration was intended to have a retrospective effect. As Mr. Justice Lewis pointed out in the opinion, the very first section of the act refers in express terms to "all cases where an action has been brought for the recovery of land." The cases of *Bailey* v. *State*, 20 *Ga.* 742, *Johnson* v. *Bradstreet Co.*, 87 *Ga.* 79 (13 S. E. 250), *Pritchard* v. *Savannah Street &c. R. Co.*, 87 *Ga.* 294 (13 S. E. 493, 14 L. R. A. 721), were rulings to the effect that, as construed by the court, the acts showed that the legislature intended that they should apply to actions pending at the time of their passage.

On November 21, 1929, the plaintiff had its fi. fa. entered on the general execution docket of the county where the land lay. By so doing it acquired, as against the rights of the claimants through their unrecorded security deeds, the right to subject this land to the payment of its judgment. If we give the act of 1931 a retrospective operation, this right of the plaintiff is destroyed. It is unnecessary to decide whether, if given the application insisted on by counsel for the claimants, it would make it retroactive in the sense forbidden by our organic law, since in our opinion it was not by the General Assembly intended to act retrospectively. Hence the rights of the holders of the security deeds and of the judgment creditor must be measured by the law as it stood before the enactment of the act of 1931. The plaintiff in fi. fa. having shown prima facie title in the defendant in fi. fa., it was error to direct the verdict in favor of the claimants.

*Judgment reversed. All the Justices concur.*